In re James GUISTOLISI, Debtor.

**BARNETT BANK OF SOUTH FLORIDA, N.A., Plaintiff,**

v.

**James F. GUISTOLISI, Defendant.**

**Bankruptcy No. 86–00478–BKC–TCB.**
**Adv. No. 86–0183–BKC–TCB–A.**

United States Bankruptcy Court, S.D. Florida.

June 3, 1986.

Robert L. Jennings, Holland & Knight, Ft. Lauderdale, Fla., for plaintiff.

Joseph Bernstein, Bernstein, Bernstein & Stein, Ft. Lauderdale, Fla., for defendant.

## MEMORANDUM DECISION

THOMAS C. BRITTON, Chief Judge.

The plaintiff/judgment creditor seeks exception from discharge under 11 U.S.C. § 523(a)(2)(B) of its claim in the amount of $190,557. The debtor has answered and the matter was tried on May 6.

Section 523(a)(2)(B) requires that plaintiff prove that the debtor obtained credit by the use of a written statement:

(i) that is materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable for [obtaining] such ... credit reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceive.

The complaint identifies three personal financial statements, but only two are pertinent because the third (dated June 31, 1984) did not exist when the last credit was extended by plaintiff to the corporation with which the debtor was associated. The credit was extended in increments between January 27 and May 31, 1984. The two personal financial statements, therefore, which are pertinent are those dated September 30 and December 31, 1983. We shall focus on the December statement which immediately preceded the first credit extension.

The credit was extended to a corporation of which the debtor was president and primary stockholder. He personally guaranteed the loan. Plaintiff argues that the corporate financial statements were false and should be a predicate for the exception of this debt. Several of my colleagues appear to have so held. It is not necessary to the determination of this case for me to decide whether this action may be predicated upon an allegedly false corporate financial statement.

■ Plaintiff identifies five respects in which the December 1983 financial statement was in error. The first is the omission of the debtor's personal liability as managing agent for his corporation's failure to account for payroll taxes. Two days after the date of this financial statement, the corporation was formally assessed a liability for this tax in the amount of $88,-186. As a matter of fact, the corporation owed closer to $130,000 on that day and that sum steadily increased to $173,000 over the next six months. This debtor, who not only owned and controlled the corporation but managed it, admits he was aware of his personal liability for the missing tax trust funds. I find that the debtor was aware of this contingent liability, knew it to be substantial and recognized that it was a material factor in assessing his personal as well as his corporation's financial condition. This finding is based in part on the fact that the debtor now testifies that he disclosed the existence of this liability to the lender. I am satisfied that he should have disclosed this liability, but I am equally certain that he did not do so. I cannot believe that the Barnett Bank's agents would have recommended these advances had it been aware that this corporation was significantly delinquent in accounting for these taxes, nor can I believe that these agents would have accepted this debtor's personal guarantee and financial statement had it known of this liability for which he was obviously contingently liable.

The omission of this major liability could not have been an oversight. It could only have resulted from a deliberate intent to deceive the lender. It is equally clear to me that this falsehood was material, because its very nature immediately raised a red flag with respect to the financial condition of the corporation and this debtor's claim that his equity in the corporation was worth $400,000 (44%) of his total stated net worth. The mere existence of this liability in any amount in excess of the amount typically due for the current reporting period would automatically require rejection of the loan application by any commercial lender.

This debtor's statement included in his assets $475,000 (52% of his net worth) as the value of a "single family home". In Florida, the personal residence of a person is totally exempt from the claims of creditors with certain exceptions not pertinent here. No commercial lending institution in this State will credit an individual's home as collateral for an unsecured debt. Eliminating this figure and the claimed equity in the business, this financial statement claims a net worth for the debtor of only $42,600 which would have provided no predicate for the credit advanced in this instance. The last two advances made by the plaintiff, in May 1984, totalled $170,-000.

■ The plaintiff next points to the fact that the debtor failed to disclose two outstanding judgments against him; one in the amount of $4,061 in favor of a hospital and another in the amount of $19,288 for child support. I find that the omission of these two judgments, once again, was deliberate for the purpose of deceiving the lender. As was the case with the omitted tax liability, the amount of these liabilities is less significant than the nature of the liabilities. Their mere existence undermined this debtor's claim that he had a net worth of over $900,000.

■ Plaintiff also points to the fact that this debtor did not own his home but merely leased it with an option to purchase and that the furniture and art which this debtor claimed as assets in the total amount of $104,000 were worth only a fraction of that amount. Standing alone these elements would not persuade me that this debtor actually intended to deceive the plaintiff. Coupled with the matters previously discussed, they provide some basis for the finding of a deliberate intent to defraud.

In addition to contending that he disclosed his tax liability and the fact that he did not own his home, this debtor's defense is that plaintiff has not carried its burden of proving that it "reasonably relied" upon this financial statement. I find, however,

that plaintiff did in fact rely upon this statement and that it did so reasonably.

The debtor argues that the lender was under an affirmative duty to check at least some of the items in the financial statement. I disagree. Neither the statute nor anything in its legislative history indicates that a lender is under a burden to verify a borrower's personal financial statement. Of course, it is free to do so and to the extent that it does so, it cannot reasonably rely upon a statement which is at variance with the information it has obtained from other sources. This is not such a case. None of the particulars noted above came to this lender's attention from other sources before it advanced its money. Nor is it surprising that the lender failed to learn of the tax liability or the two outstanding judgments against this debtor. This financial statement appears complete and suggests a personal net worth of $442,-600 (excluding the almost certainly exempt homestead). This sum is two-and-one-half times the sum advanced as credit. It does not on its face reasonably require independent verification.

It follows that plaintiff has carried its burden of proving that its claim is excepted from discharge under § 523(a)(2)(B). As is required by B.R. 9021(a), a separate judgment will be entered to that effect. Costs may be taxed on motion.