In the Matter of Sharon K. & Scott M. STRATTON, Debtors.

SOUTHWEST FINANCIAL BANK & TRUST COMPANY OF ORLAND PARK, Plaintiffs,

v.

Sharon K. & Scott M. STRATTON, Defendants.

Bankruptcy No. 91 B 9129.
Adv. No. 91 A 823.

United States Bankruptcy Court, N.D. Illinois, E.D.

May 12, 1992.

John B. Petrulis, Frankfort, Ill., for defendants.

Carol S. McMahan, Carroll, Hartigan & McCauley, Ltd., Chicago, Ill., for plaintiffs.

## MEMORANDUM, OPINION AND ORDER

ROBERT E. GINSBERG, Bankruptcy Judge.

### FACTS

This matter comes before the court on Southwest Financial Bank & Trust Company of Orland Park's complaint to determine the dischargeability of debts owed to the Bank by Sharon and Scott Stratton under § 523(a)(2)(B).

The Bank claims that the debts the debtors owe it are not dischargeable because the debtors induced the Bank to make the loans by using false financial statements. The Bank presented its evidence at trial. At the close of the plaintiff's case, the debtor moved for judgment under F.R.Civ.P. 52(c), made applicable to these proceedings by F.R.Bkrtcy.P. 7052, on the grounds that the Bank failed to prove all of the elements required for a determination that the debt these debtors owe the Bank is not dischargeable.

The evidence at trial showed that in a series of loan transactions the debtors borrowed a total of $105,844 from the Bank. As part of the loan application and approval process the debtors completed four different personal financial statements and submitted each to the Bank. The forms asked the debtors to supply information regarding their assets and liabilities, including secured and unsecured notes payable to banks and others, accounts and bills due, real estate mortgages, and other debts. The debtors never disclosed in any of the financial statements the fact that Scott Stratton owed some $63,000 in student loans. The Bank approved the various loans to the debtors, ostensibly based on the information contained in the debtors' financial statements, prior payment history, and the need for a chiropractor in the community.

The debtors filed a Chapter 7 petition on April 29, 1991, listing the student loans as a liability. The Bank argues that the debtors' remaining obligation of $100,280 to the Bank should not be discharged under the Bankruptcy Code because the debtors' written financial statements were materially false, the Bank reasonably relied on the financial statements in approving the loans to the debtors, and the debtors intended to deceive the Bank by omitting Scott Stratton's student loan obligations from the financial statements. The debtors, on the other hand, take the position in their pleadings that they omitted the student loan information after discussing the matter with Bank officers, because the loans were in deferral and were thus not current liabilities. Therefore, they did not have the requisite intent to deceive the Bank. The matter came before the court for trial. The Bank put on its evidence and rested. At the close of the Bank's evidence, the debtors moved for judgment in their favor. For the reasons stated below, the court grants the debtors' motion and enters a judgment that the debts the debtors owe the Bank are dischargeable and are discharged in this Chapter 7 case.

### JURISDICTION AND PROCEDURE

This court has jurisdiction over this dispute under 28 U.S.C. § 1334(b) as a matter arising under § 523(a) of the Bankruptcy Code. This matter is before the court for determination under Local Rule 2.33 of the United States District Court for the Northern District of Illinois automatically referring bankruptcy cases and proceedings to this court for hearing and determination. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) as a matter concerning the dischargeability of a particular debt.

## DISCUSSION

Section 523(a)(2)(B) of the Bankruptcy Code provides that a discharge from a debt will not be granted:

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive. . . .

It is clear that the burden of proof was on the Bank to prove by a preponderance of the evidence all four elements of § 523(a)(2)(B) in order to have the debts these debtors owed to it found not dischargeable under § 523(a)(2)(B).[1] *Grogan v. Garner*, — U.S. —, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

■ The Bank proved by the preponderance of the evidence that the personal financial statements the debtors submitted to the Bank were materially false in that they omitted some $63,000 of student loans owed by Scott Stratton. Clearly, a debt of $63,000 is material to the Bank in making a loan decision. *Matter of Bogstad*, 779 F.2d 370 (7th Cir.1985) (a materially false statement is one that contains an important or substantial untruth. The measuring stick of material falsity is whether the financial institution would have made the loan if the debtor's true financial condition had been known). The testimony of Jeff Vail, the Bank officer the debtors dealt with, was sufficient to establish the materiality of the student loans. The loan documents themselves contained financial statements that on their face were false by failing to disclose the student loans the debtors admitted were owed when the financial statements were prepared and submitted to the Bank.

■ The Bank also proved the next element by a preponderance of the evidence, *i.e.*, that the personal financial statements concerned the "debtor's or an insider's financial condition." From Scott Stratton's point of view, the financial statements clearly concerned his, *i.e.*, "the debtor's" financial condition. From Sharon Stratton's point of view, it is uncontested that even if she were not personally liable for the student loans, the financial statement she signed related to "an insider's financial condition." Clearly, Scott Stratton was an "insider" as to Sharon Stratton. 11 U.S.C. § 101(31), and the financial statement purports to set out Scott Stratton's financial condition in full.

■ The Bank proved the third element of the exception to discharge, that the Bank reasonably relied on the debtors' personal financial statement. Jeff Vail, the Bank officer who handled these loans, testified at trial that he had reviewed the debtors' file, including the personal financial statements, before approving the bank's loan to the debtors. Vail also testified that if the Bank had known about the student loans, the Bank officers charged with the decision to make the loan would have been unlikely to approve the loan, since the inclusion of the student loans would have given the debtors a negative net worth and would have strongly indicated that the debtors would be unable to make the payments on an additional loan.[2]

■ Thus, the Bank has proved the first three elements of the exception to discharge by a preponderance of the evi-

---

**1.** There is no dispute here that the loan applications are written financial statements for purposes of § 523(a)(2)(B).

**2.** Of course, this finding, like all of the other findings in this opinion, is only made for purposes of the motion for judgment now before the court. If the court were to deny the motion, the debtors could adduce evidence attacking

Vail's credibility, with respect to either his actual reliance or the reasonableness of that reliance. It may well be in this day and age that the fact the Bank knew the debtor was a recent graduate of chiropractic school was sufficient notice to require inquiry, at least from the debtor, about the existence of student loans.

dence. But this is not where the Bank's burden of proof ends. The Bank must also prove by a preponderance of the evidence that in omitting the student loans from the personal financial statements the debtors intended to deceive the bank into making the loan or acted with reckless disregard for the truth of their financial statement. *See, North Community Bank v. Boumenot*, 106 B.R. 149 (Bankr.N.D.Ill.1989) (showing reckless disregard for the truth can satisfy the intent requirement of § 523(a)(2)(B).). The Bank did not offer any evidence worth noting on this element at trial. The Bank argues it is unnecessary for it to adduce evidence with respect to the debtors' intent because the fact that the debtors intended to deceive the Bank into extending the loan can be inferred from the evidence presented to prove the first three elements of the exception to the discharge. In effect the Bank is saying, "Because we proved the first three elements required by § 523(a)(2)(B), we do not have to prove the fourth element."

This argument is without merit. The element of intent is a separate and distinct statutory requirement that must be proved by the Bank to except the debtors debt to it from discharge. 11 U.S.C. § 523(a)(2)(B)(iv). *See, e.g., In re Chapman*, 1991 WL 247602 (N.D.Ill.); *In re Glen*, 115 B.R. 837, 841 (Bankr.E.D.Pa.1990); *In re Burnett*, 129 B.R. 299, 301 (Bankr.M.D.Fla.1991).

It is true, as the Bank argues, that intent to deceive can rarely be proved by direct evidence and usually must therefore be inferred from the surrounding circumstances. *In re Leger*, 34 B.R. 873 (1983). And, it is also true that demonstration of a reckless disregard for the truth will also satisfy the intent requirement. *North Community Bank v. Boumenot*, 106 B.R. 149 (Bankr.N.D.Ill.1989); *In re Masegian*, 134 B.R. 402 (Bankr.E.D.Cal.1991). However, the Bank has failed to produce sufficient evidence of the surrounding circumstances to prove to this court by a fair preponderance of the evidence that the debtors intended to deceive the Bank or that the debtors acted with a reckless disregard for the truth. The fact is that there is virtually no evidence of intent or circumstances that would be relevant to a determination of intent that has come out at trial. Instead, the record leaves the court with the conclusion that intent to defraud was no more likely to have motivated the debtors to omit the student loans from their loan application than any other motivation. In fact, after hearing the plaintiff's evidence, the court does not know why the debtors omitted the student loans from their financial disclosure made to the Bank. Certainly it is possible that the debtors intended to deceive the Bank by failing to disclose the student loans. However, it is equally possible that the debtors were confused and genuinely believed that because payments on the student loans were in deferral they were not, therefore, debts for purposes of their financial statements.

In addition, the debtors might not be identical in terms of intent. One debtor might have the requisite intent and the other lack it. For example, Sharon Stratton may have known nothing about Scott Stratton's student loans and thus, could have been unaware of any omission from the financial statements. Alternatively, the debtors, as they claim in their pleadings, *see, e.g.,* Plaintiff's Pretrial Statement, may have been told by a Bank officer to omit the student loans from their financial statements. Certainly, the testimony of the Bank's witnesses in this regard was insufficient to exclude the possibility of this having occurred. The Bank's evidence as a whole fails to permit this court to conclude that intent to defraud was a more probable reason for the omission of the student loans than the other possibilities discussed in this opinion.

In the cases where a court has inferred an intent to deceive a creditor, the debtor did more than simply supply false information. For example, in *In re Masegian*, 134 B.R. 402 (Bankr.E.D.Cal.1991), the court inferred an intent to deceive the creditor where the debtor, an attorney and experienced entrepreneur, failed to disclose, when asked, a lawsuit in which he was the sole defendant. The court considered the

debtor's background and concluded that it was not credible to believe that the debtor's failure to disclose the lawsuit was a mistake. Further, given the debtor's background, his failure to carefully review his answers to the questions and his resultant failure to disclose the lawsuit, demonstrated a reckless indifference or disregard for the truth of the information such that the discharge should not be granted. By the same token, the court was able to infer intent in *In re Myers*, 124 B.R. 735 (Bankr. S.D.Ohio 1991). In *Myers*, it was clear from the totality of the circumstances that the debtor intended to deceive his creditors by submitting a false financial statement. In *Myers*, the debtor filed for protection under the Bankruptcy Code nine days after submitting the false statement. The creditor was able to show that the debtor knew the information contained in the financial statement was false because the debtor knew his asset valuations were inaccurate, and also probably knew that he was insolvent and would have to file a bankruptcy petition.

In the present situation there are no circumstances from which the court can infer intent. The Bank seems to argue that because the financial statements were false and that the debtors knew about the student loans and omitted them, the court should infer an intent to deceive the Bank. However, there is no adequate proof as to *why* the debtors did not include the student loan obligations on their financial statements. There are no circumstances like those in *Myers*, supra, that would logically lead the court to infer intent to defraud. The Bank can point to no circumstances surrounding the loan transaction that would lead the court to infer from a fair preponderance of the evidence that it was intent to defraud, rather than any other

motivation, that caused the debtors to omit the student loans from the financial statements.

The debtors had no significant experience in commercial matters. Their bankruptcy filing did not come immediately on the heels of the loan from the Bank. There is no evidence that the debtors had any idea they would be unable to repay the Bank and would wind up in bankruptcy when they submitted their financial statements to the Bank. In sum, the evidence of the surrounding circumstances offered by the Bank leads the court to conclude that it cannot determine what motivated the debtors to omit the student loans from their financial disclosure, and thus the Bank has failed to satisfy its burden of proof with regard to the debtors' fraudulent intent.[3]

In that regard, the Bank failed to call either debtor as a witness to testify. Thus, there is no evidence to show that Sharon Stratton was aware of her husband's student loans, or that she behaved with intent to deceive or with a reckless disregard for the truth when she prepared and/or signed the financial statements. By the same token, there is no evidence, circumstantial or otherwise, showing that Scott Stratton acted with intent to deceive or reckless disregard for the truth in preparing and submitting the financial statements to the Bank.

■ The burden of proof always remains with the Bank. *In re Schraw*, 136 B.R. 301 (Bankr.S.D.Fla.1992). If the Bank establishes a prima facie case by a fair preponderance of the evidence at the close of its evidence, the burden of going forward shifts to the debtor to refute the Bank's evidence. *In re Colvin*, 117 B.R. 484, 487

---

**3.** The debtors, in their pleadings, allege that Bank officials knew about the student loans and advised them not to include the student loans on the financial statement. Jeff Vail, chief credit officer at the Bank, provided only vague testimony about his discussions concerning the student loans. He could not remember discussing the financial statements with the debtors and thinks he may have discussed student loans with the debtors since he knew Scott Stratton had just finished chiropractic school. Thus, Vail's

testimony is insufficient to prove, by a preponderance of the evidence, that the debtors omitted the student loan information with the intent to deceive the Bank because Vail's testimony concerning student loan discussions is too vague to show that the debtors knew that they were obligated to disclose information about the student loans or that the debtors' failure to include the student loans was done with intent to defraud the Bank or even with reckless disregard for the truth.

(Bankr.E.D.Mo.1990). However, the burden of going forward only shifts to the debtor if the Bank proves the nondischargeability of the debt in question by a fair preponderance of the evidence. This the Bank failed to do. Without proof of the debtors' state of mind in submitting the financial statements to the Bank, the debt the debtors owe the Bank cannot be found to be nondischargeable and the burden of going forward does not shift to the debtors. The debtors do not have to prove they did not have the requisite intent. Instead the Bank must prove the debtors acted intentionally or with reckless disregard. The Bank having failed to do so, the debtors' motion under F.R.Bkrtcy.P. 7052 must be granted.

## CONCLUSION

For the foregoing reasons, judgment will be entered in favor of the debtors Sharon and Scott Stratton.