938

In re Rudolph BRUCE, Joan Bruce,
a/k/a Joan Kennedy, Debtors.

TOWN OF HEMPSTEAD EMPLOYEES
FEDERAL CREDIT UNION,
Plaintiff,

v.

Rudolph BRUCE, Joan Bruce, a/k/a
Joan Kennedy, Defendants.

Bankruptcy No. 896–84772–478.
Adversary No. 897–8060–478.

United States Bankruptcy Court,
E.D. New York.

Nov. 26, 1997.

Rudolph Bruce, Joan Bruce, Hempstead, NY, Pro Se.

Heller & Rosenberg, P.C., Craig S. Heller, Garden City, NY, for Plaintiff, Town of Hempstead Employees Federal Credit Union.

## DECISION ON NONDISCHARGEABILITY PURSUANT TO 11 U.S.C. SECTION 523(a)(2)(B)

DOROTHY EISENBERG, Bankruptcy Judge.

The Town of Hempstead Federal Credit Union ("HEFC" or the "Plaintiff"), filed a complaint to determine the dischargeability of a debt in the amount of $15,889.06 pursuant to 11 U.S.C. Section 523(a)(2)(B). This Court held a trial on this adversary proceeding on September 30 and October 23, 1997. Upon consideration of the evidence presented by HEFC and Mr. and Mrs. Bruce (the "Bruces" or the "Debtors"), this Court finds that the Plaintiff's debt is dischargeable based on the following findings of fact and conclusions of law.

## FINDINGS OF FACT

Rudolph Bruce has been employed by Nassau County in the sewer maintenance department for the past thirteen years. Joan Bruce is a long-time employee of the U.S. Postal Service on a part-time basis. As an employee of Nassau County, Rudolph Bruce was eligible to apply for loans from HEFC, the Plaintiff herein.

In the past, Mr. Bruce had taken out personal loans from the Nassau County Federal Credit Union ("NCFCU") from time to time in varying amounts to assist him during times of financial trouble. Mrs. Deborah D'Abbraccio, who was employed by the NCFCU during the time period from 1985 to 1995, interviewed Mr. Bruce for several of the loans and assisted in the processing of these loans. Mrs. Bruce was co-maker on several of the loans given by the NCFCU, and in connection with the loan approval process, TRW reports were run on Mrs. Bruce. In each instance, the TRW report reflected that Mrs. Bruce was indebted to the New York Metro Area Postal Credit Union ("Metro") pursuant to a revolving credit agreement not to exceed $6,000. Mrs. Bruce had been indebted to Metro for the

past twenty years, and generally carried a balance in excess of $5,000.

On August 24, 1994, the Debtors purchased a home located in Hempstead, N.Y. In connection with the purchase of their home, the Debtors obtained financing by EAB Bank in the amount of $75,000, secured by a first mortgage on the premises. In order to obtain the financing by EAB, the Debtors filled out a Uniform Residential Loan Application upon which the Debtors were obligated to list all of their debts. Included in the list of debts was Mrs. Bruce's obligation to Metro in the amount of $5,639. In connection with the mortgage, EAB had obtained TRW reports for Mr. Bruce and Mrs. Bruce, and the Metro obligation was listed on Mrs. Bruce's report. As a result of the purchase of the home, the Debtors became obligated to make monthly mortgage payments in the amount of $955. Shortly after purchasing their home, the Debtors encountered difficulty in meeting their financial obligations, and as a result their credit card debt increased significantly. Within one year of obtaining the mortgage from EAB, Rudolph Bruce visited the loan office of HEFC and discussed his financial situation with Mrs. D'Abbraccio, who, after leaving NCFCU, became a manager for loans in the Plaintiff's lending department. Mrs. D'Abbraccio, who was familiar with Mr. Bruce due to her prior employment with NCFCU, suggested that he apply for a debt consolidation loan which would reduce his monthly obligations significantly. Although she had been the loan officer on several prior loans to Mr. Bruce, she denied being familiar with the facts contained in his prior loan applications as such information may have applied to the loan in question, which included information as to Mrs. Bruce, who co-signed the loans. This is not unreasonable in light of the large volume of loans Mrs. D'Abbraccio processed during any given time period. Before the Debtors executed the loan documents, she reviewed the Debtors' finances and assisted them with the necessary forms, including a Loanliner Application and Credit Agreement.

When reviewing loan applications, Mrs. D'Abbraccio was obligated to comply with lending guidelines promulgated by the Board of Directors of HEFC. Said guidelines must be approved by the National Credit Union Administration, which audits HEFC on a regular basis. Pursuant to the formula, the applicant's monthly gross income is divided by the monthly debts, inclusive of the monthly payment of the loan being sought. If, as in the case of the Debtors, the applicant has a mortgage and a car loan, the debt to income ratio cannot exceed 40%. Initially, Mr. Bruce sought to obtain a debt consolidation loan based on his finances alone. On Item 7 of the Loanliner Application, Mr. Bruce was asked to list all of his debts excluding the debts he was seeking to consolidate. Mr. Bruce listed his mortgage and his debt due to NCFCU. Based on Mr. Bruce's debt to income ratio, he was advised that he would need Mrs. Bruce to co-sign for the loan. Mr. Bruce was advised to return to the credit office with his wife, who was to bring a copy of her pay stub for purposes of income verification.

The Bruces returned to the credit office to see Ms. D'Abbraccio, and Mrs. Bruce had her pay stub in hand. Mrs. D'Abbraccio reviewed Mrs. Bruce's pay stub, which reflected, *inter alia*, the following on a bi-weekly basis:

| | |
|---|---|
| —Gross income: | $1,822.68 |
| —Deductions | |
| "A lot": | $600.00 |
| UN W: | $15.08 |
| INS 3L: | $5.60 |
| VBP: | $6.00 |
| 8UND: | $38.75 |
| LO588: | $54.82 |
| HP512: | $58.90 |
| —Net pay: | $799.93 |

(Plaintiff's Exh. 8).

Mrs. Bruce was questioned whether her Loanliner Application revealed all of her debts and she indicated that it did. The Loanliner Application made no mention of her obligation to Metro. On Item 7 of the Loanliner Application, which required a listing of all debts, "see applicant" had been written across the lines. Therefore, Item 7 on Mrs. Bruce's application was the same as Item 7 on Mr. Bruce's application, and the Metro obligation was not disclosed as an

additional debt held by Mrs. Bruce. Mrs. D'Abbraccio ran an Equifax credit search on both Mr. Bruce and Mrs. Bruce at the time the loan was made, which only revealed the credit card obligations Mr. Bruce was seeking to consolidate, as well as the other debts listed by the Debtors on their respective Loanliner Applications. The Equifax report did not list the continuing obligation Mrs. Bruce had to Metro. The Plaintiff made no further credit check of any other service.

The Bruces also filled out an Advance Request Voucher and Security Agreement dated September 26, 1995, at the time the loan was made. On the agreement, the Debtors were to list changes since the last advance. The Metro debt of approximately $400 per month was not listed on the agreement.

Mrs. Bruce had been indebted to Metro for twenty years. The Metro obligation had been revealed in prior loan applications and appeared on TRW reports obtained by other lenders.

At the time Mrs. D'Abbraccio processed the debt consolidation loan and reviewed Mrs. Bruce's pay stub, she did not inquire as to the nature of the $600 deduction marked "alot" which was reflected on Mrs. Bruce's pay stub, nor did she inquire as to whether Mrs. Bruce was paid on a weekly or bi-weekly basis. If Mrs. D'Abbraccio had attempted to discover the genesis of the $600 biweekly deductions for "alot", she would have learned that approximately $200 of the deduction went towards payment of the Metro obligation. The remainder was applied in partial payment of the Debtors' mortgage and for a savings plan.

Based on the financial information provided by the Debtors, and the Equifax credit report, the Plaintiff concluded that the Debtors' debt to equity ratio was 33% which fell within the guidelines for approval that the Plaintiff was obligated to follow. Therefore,

she authorized the loan. However, this debt to equity ratio was based on an incorrect analysis by the witness of Mrs. Bruce's pay stub. First, Mrs. D'Abbraccio did not use the proper amount on the pay stub reflecting bi-weekly gross pay of $1,822.68. Mrs. D'Abbraccio's testimony revealed that she incorrectly assumed that Mrs. Bruce's pay was $556.14, which number was not under the "gross pay" column. If Mrs. D'Abbraccio had properly reviewed the pay stub, she would have seen that the amount of $556.14 was clearly not a statement of her gross pay, but was a component of her gross pay. (Plaintiff's Exh. 8). Further, Mrs. D'Abbraccio compounded her error by falsely assuming that Mrs. Bruce was paid on a weekly basis. Therefore, she took the incorrect amount of $556.14 multiplied this amount by 52, and divided this number by 12 to come up with a monthly gross pay of approximately $2,417 (Plaintiff's Exh. 6).

In fact, if the correct figures were used by the Plaintiff at the time the Debtors applied for the loan in question, the Plaintiff would have discovered that the Bruces' debt to income ratio was 28% if the Metro obligation was not included, and 32% if the Metro obligation was included. Mrs. Bruce's gross monthly income was $3,949, based on a bi-weekly income of $1,822, as reflected in her pay stub. When added to Mr. Bruce's income, the Debtors' monthly gross income amounted to $6,366. Upon dividing the Debtors' monthly disclosed debt of $1,590 by the Debtors' true gross monthly income, the Court arrives at a debt ratio equal to 28%. Even if the monthly obligation to Metro in the amount of $400 is added to the Debtor's monthly debt of $1,590, the debt ratio equals 32%, which is still well within the 40% guideline adopted by HEFC. Therefore, the Bruces would have qualified for the debt consolidation loan regardless of whether the obligation to Metro was included.[1]

---

1. The Court notes that at trial Mrs. D'Abbraccio realized her mistake in assuming that Mrs. Bruce was paid on a weekly basis, and calculated that even if the mistake were corrected, the Bruce's debt ratio would equal 39%, and therefore they would still qualify for the loan if the Metro obligation were not included. Mrs. D'Abbraccio also testified that if her mistake was corrected and

the Metro obligation were included, the Debtors would not have qualified for the debt consolidation loan because their debt ratio would have exceeded 40%. However, it appears that her calculations are based on incorrect numbers because the Court's calculations reveal that the Bruces' debt ratio would have fallen below 40% regardless of whether the Metro obligation were

The Bruces received their loan in the amount of $17,111.06, which was used to pay off credit card balances, resulting in a smaller monthly payment to debt service. On both the Loanliner Application and the Advance Request Voucher and Security Agreement, Mrs. Bruce provided her signature and made a representation that the information on the forms was true and accurate. Mrs. Bruce's rationale for not listing the Metro debt on either form was that her pay stub reflected a deduction for the Metro loan, and that any credit report run on Mrs. Bruce would have revealed her obligation to Metro, as reflected in her TRW report.

The Bruces had never fallen in arrears on their obligations to the Nassau County Federal Credit Union, and Mrs. D'Abbraccio acknowledged that she had no reason to believe they were untrustworthy or deceptive people. There is no indication that the Bruces knowingly or intentionally failed to reveal to Mrs. D'Abbraccio the debt owed to Metro in an attempt to qualify for the loan, nor were the Bruces aware that HEFC used incorrect numbers when determining whether the Bruces qualified for the debt consolidation loan.

Shortly thereafter, the Bruces fell behind in their financial obligations, resulting in the filing of a petition for relief under Chapter 7 of the Bankruptcy Code on July 23, 1996. On January 31, 1997, the Plaintiff commenced this adversary proceeding, alleging that Mr. and Mrs. Bruce fraudulently induced the Plaintiff to loan the funds in question by failing to disclose Mrs. Bruce's loan with Metro, and that the debt owed to the Plaintiff in the amount of $15,889.06 should be deemed non-dischargeable under Section 523(a)(2)(B) of the Bankruptcy Code. At the trial, the complaint as to Mr. Bruce was dismissed, leaving at issue whether (1) Mrs. Bruce's failure to disclose the Metro loan was material to HEFC's decision to grant the loan; (2) HEFC reasonably relied on Mrs. Bruce's failure to disclose the Metro obligation in approving the loan; and (3) Mrs. Bruce intentionally failed to disclose her debt

included. As Mrs. D'Abbraccio failed to go over her calculations step by step with the Court, it is

to Metro in order to induce HEFC to offer the debt consolidation loan.

## DISCUSSION

 In furtherance of the objectives of the bankruptcy laws to provide a fresh start to an honest but unfortunate debtor, all exceptions to discharge are to be strictly construed in favor of the debtor and against the creditor, who also bears the burden of proof *First Am. Bank of N.Y. v. Bodenstein (In re Bodenstein)*, 168 B.R. 23, 27 (Bankr. E.D.N.Y.1994); *Hudson Valley Water Resources Inc. v. Boice (In re Boice)*, 149 B.R. 40, 43 (Bankr.S.D.N.Y.1992); *Horowitz Finance Corp. v. Hall (In re Hall)*, 109 B.R. 149, 153 (Bankr.W.D.Pa.1990). The burden of proof required to establish an exception to discharge under Section 523 of the Bankruptcy Code is a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991). Where a plaintiff presents sufficient evidence to prove the non-dischargeability of the debt in question, the burden thereafter shifts to the debtor to provide evidence to rebut the plaintiff's prima facie case. *See Bodenstein*, 168 B.R. at 28; *Southwest Fin. Bank & Trust Co. v. Stratton (In re Stratton)*, 140 B.R. 720, 724–25 (Bankr.N.D.Ill.1992).

HEFC alleges that its debt should be deemed nondischargeable under Section 523(a)(2)(B) of the Bankruptcy Code, which provides in relevant part:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt -

(2) for money, property, services, or an extension, renewal, or refinancing or credit, to the extent obtained by -

(B) use of a statement in writing -

(I) that is materially false;

(ii) respecting the debtor's ... financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property or services reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive.

impossible to determine the genesis of her errors.

11 U.S.C. Section 523(a)(2)(B). Each of the elements must be proven by the plaintiff in order to it to succeed under this section.

Based on the facts before the Court, it is undisputed that Mrs. Bruce's signed Loanliner Application, which was submitted to HEFC in support of the application for the debt consolidation loan, constitutes a written statement respecting her financial condition. It is also clear that Mrs. Bruce's Metro obligation was not listed in item 7 of the Loanliner Application regarding Mrs. Bruce's debts. However, HEFC has failed to establish that such omission was material or intentional.

■■■ A materially false statement has been described as "one that contains an important or substantial untruth. The measuring stick of material falsity is whether the financial institution would have made the loan if the debtor's true financial condition had been known." *In re Stratton*, 140 B.R. at 722. If HEFC had used the proper calculations when determining Mrs. Bruce's monthly gross pay, then the Bruces would have qualified for the debt consolidation loan even if the Metro obligation was disclosed. Therefore, by HEFC's own guidelines, the omission of the Metro obligation from the Loanliner Application would have made no difference in HEFC's decision to grant the loan if the correct gross pay figures were utilized in HEFC's calculations. As a result, this Court cannot find that the omission of the Metro obligation was material in any respect.

■■■ The next element of the exception to discharge is whether HEFC reasonably relied on Mrs. Bruce's financial statement contained in the Loanliner Application. *See Field v. Mans*, 516 U.S. 59, ——, 116 S.Ct. 437, 442, 133 L.Ed.2d 351 (1995). The reasonableness of a creditor's reliance is determined by the facts peculiar to each case. In a case involving a lending institution, this standard includes a comparison of the creditor's actual conduct with the debtor and the industrywide practice. *In re O'Connor*, 149 B.R. 802, 809 (Bankr.E.D.Va.1993); *In re Compton*, 97 B.R. 970 (Bankr.N.D.Ind.1989). In this case, given that HEFC's calculations were based on mistaken assumptions, any

reliance on said calculations were not reasonable by any standard.

HEFC did provide ample testimony that its lending practices fall within the guidelines mandated by the National Credit Union Administration. Mrs. D'Abbraccio reviewed the Debtors' applications and Mrs. Bruce's pay stub to determine their debt ratio, and reviewed the Debtors' Equifax reports to ensure that to the best of her knowledge, all debts were correctly disclosed. Further, Mrs. D'Abbraccio testified that she questioned the Debtors to make sure that no material information had been left off the applications. However, HEFC incorrectly calculated the Debtors' debt ratio at 33% based upon an erroneous conclusion that Mrs. Bruce was paid the amount of $556.14 on a weekly basis. HEFC's analysis of the Debtors' financial condition was flawed, and HEFC's allegations that if the Metro debt was known and included in the calculations the debt ratio would have exceeded 40% is also inaccurate. In fact, when the actual gross income figures are calculated together with the Debtors' obligations inclusive of the debt to Metro, the Debtors' debt ratio still falls within the Plaintiff's guidelines for granting the debt consolidation loan. Therefore, any actual reliance on the omission of the Metro obligation was not reasonable.

■■■ Finally, HEFC has failed to establish by a preponderance of the evidence that Mrs. Bruce intentionally failed to disclose the Metro debt in order to obtain the debt consolidation loan. Intent to deceive may be gleaned from the surrounding circumstances and a demonstration of reckless disregard for the truth also satisfies the intent requirement. *In re Stratton*, 140 B.R. at 723 (other citations omitted). However, the circumstances surrounding this transaction all point to Mrs. Bruce's lack of intent to defraud. Mrs. Bruce disclosed the Metro obligation to EAB when she and her husband applied for a mortgage, and the loan application to EAB did not contain any omissions or misstatements. Prior credit checks by previous lenders also revealed the Metro debt which had been in existence for twenty years. The Loanliner Application did not contain any other misstatements which would indicate an

intent to be untruthful. In addition, Mrs. Bruce testified that she was under the impression that she was only to list the loans to be consolidated and she believed that her pay stub accurately reflected her obligation to Metro. She was aware that the obligation had been listed on her TRW reports each time this search was used. She believed that this information would have been revealed to HEFC had they chosen to use TRW's credit reporting service. She was not aware that HEFC used Equifax reports to verify financial information. Finally, rightly or wrongly, Mrs. Bruce believed that Mrs. D'Abbraccio was aware of the Metro obligation due to her prior employment at NCFCU where she had processed a number of loans for the Bruces and the Metro loan had been revealed consistently.

This Court found the Debtors to be credible witnesses and was not given any reason to doubt the veracity of their testimony. The Debtors' credit history and prior dealings with Mrs. D'Abbraccio did not indicate that the Debtors were customarily untruthful or that they had failed to honor past obligations. Mrs. D'Abbraccio testified that she knew the Debtors to be truthful in the past, and that the Debtors generally remained current with their financial obligations. Based on the preponderance of evidence supporting a lack of fraudulent intent, the Court cannot find that Mrs. Bruce fraudulently or recklessly failed to disclose the Metro debt. Her failure to disclose the Metro obligation appears to have been an honest oversight by Mrs. Bruce or a misunderstanding as to what debts were to be listed on item 7 of her Loanliner Application, but clearly not an intentional effort to deceive.

In sum, HEFC has failed to sustain its burden of proof as to several of the elements of Section 523(a)(2)(B) of the Bankruptcy Code. The omission of an immaterial fact which would have no bearing, pro or con, upon the granting of a loan or incurring of a debt, precludes this Court from finding that the debt is nondischargeable. In addition, there is no indication from the record before the Court that the Debtors intended to defraud the Plaintiff. This lack of evidence to support a finding of intent to defraud is in

and of itself sufficient to grant the Debtors a discharge of this debt. Even if the Plaintiff's calculations were correct, and the additional debt owed to Metro brought the loan into a position of non-compliance with its lending practices, the debt would still be dischargeable based on the lack of evidence as to Mrs. Bruce's intent to deceive pursuant to Section 523(a)(2)(B)(2)(iv) of the Bankruptcy Code. Therefore, the Court finds in favor of the Debtors.

**CONCLUSION**

1. The Court has jurisdiction over the subject matter and the parties to this core proceeding pursuant to 28 U.S.C. Section 1334 and Section 157(b)(2)(I).

2. HEFC has failed to establish by a preponderance of the evidence that Mrs. Bruce's failure to list the Metro obligation on her Loanliner Application was a material omission because such failure to list the Metro obligation had no bearing on whether the Debtors qualified for the debt consolidation loan.

3. For the same reasons, HEFC has failed to establish any reasonable reliance on the omission of the Metro obligation.

4. HEFC has failed to establish by a preponderance of the evidence that Mrs. Bruce's failure to list the Metro obligation on the Loanliner Application was intentional or constituted a reckless disregard for the truth.

5. Based on HEFC's failure to establish a prima facie case under Section 523(a)(2)(B) of the Bankruptcy Code, the Debtors' debt to HEFC in the amount of $15,889.06 is discharged. Settle an Order in accordance with this decision within ten (10) days hereof.