In re Randolph S. MARTIN and
Catherine Fox Martin,
Debtors.

Union Planters Bank, N.A., Plaintiff,

v.

Randolph S. Martin, Defendant.

Bankruptcy No. 02–72273.
Adversary No. 02–7181.

United States Bankruptcy Court,
C.D. Illinois.

Aug. 28, 2003.

 

Gordon W. Gates, Springfield, IL, for debtor.

E. Franklin Childress, Jr., Memphis, TN, Emmet A. Fairfield, Springfield, IL, for plaintiff.

Mark T. Dunn, Bloomington, IL, for trustee.

## OPINION

LARRY LESSEN, Bankruptcy Judge.

The issue in this adversary proceeding is whether a debt owed to Union Planters Bank, N.A. ("Plaintiff") should be determined nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(B) because of a materially false financial statement submitted by Dr. Randolph S. Martin during the loan application process and refinancing of a 1980 Cessna Citation II 550 airplane.

The instant adversary proceeding arises out of a Complaint filed by the Plaintiff against the Defendant, Randolph S. Martin, the above named-debtor ("Debtor"), seeking a nondischargeable judgment in the approximate amount of $1,556,330.22 under 11 U.S.C. § 523(a)(2)(B) and Fed. R.Bankr.P. 4007(a).

By virtue of 28 U.S.C. § 157(b)(2)(I) this is a core proceeding. The court has subject matter jurisdiction of this proceeding pursuant to 28 U.S.C. §§ 1334(b) and 157(a).

The Plaintiff is a national bank with its headquarters located in Memphis, Tennessee, which, specializes in, among other banking and lending activities, aircraft lending. The Debtor, Randolph S. Martin, is a cardiologist practicing and residing in Springfield, Illinois. The Debtor and his wife filed a voluntary petition under Chapter 7 of the Bankruptcy Code on May 24, 2002 ("petition date"). The Court originally

fixed August 16, 2002, as the last day for the filing of complaints objecting to discharge and for the determination of dischargeability of debts. On or about August 15, 2002, the Plaintiff filed a timely Motion pursuant to Fed.R.Bankr.P. 4007(c) seeking an order extending the time to file a dischargeability complaint which was duly granted in an Order entered August 16, 2002. On August 18, 2002, the Plaintiff timely filed the instant Complaint seeking to except a debt in the amount of $1,556,330.22 from the Debtor's discharge pursuant to 11 U.S.C. § 523(a)(2)(B). As of the petition date, the Debtor was indebted to the Plaintiff in the total amount of $1,556,330.22 by virtue of a personal guaranty executed by the Debtor guaranteeing the debts of an aircraft leasing business known as Martin Leasing, Inc. The Debtor owned 100% of Martin Leasing, Inc, and he served as president and the sole director of the corporation. Martin Leasing, Inc., is a single asset company formed solely for ownership of the Debtor's private airplane.

In order to secure the loan from the Plaintiff, the Debtor submitted a written Financial Statement dated April 30, 2001, containing a report of his assets and liabilities. The Debtor also submitted his 1999 and 2000 tax returns to the Plaintiff prior to the extension of credit. The Plaintiff also obtained an aircraft appraisal on December 13, 2001. On December 11, 2001, the Plaintiff obtained an Equifax credit report in order to examine the Debtor's credit history prior to extending credit. According to the Plaintiff's Credit Memo dated December 13, 2001, the Plaintiff approved the loan to the Debtor relying on the Debtor's Financial Statement dated April 30, 2001, the Equifax report, the Debtor's Beacon Score, and his tax returns for 1999 and 2000. On December 17, 2001, the Debtor, as President of Martin Leasing, Inc., executed a Promissory Note in favor of the Plaintiff in the principal amount of $1,575,560.00. The Debtor also executed a Guaranty Agreement on December 17, 2001, securing payment of the promissory note.

The Plaintiff approved a loan in the amount of $1,575,560. On December 24, 2001, the Plaintiff authorized a wire transfer of the loan proceeds in the amount of $1,560,000. (The difference—$15,560—is made up of a $1,000 bank commitment fee plus $14,560 origination fee to Aviation Finance.) The Financial Statement dated April 30, 2001, failed to list over $23 million worth of contingent liabilities. Four months after the loan was made, the Debtor and his wife filed their voluntary Chapter 7 petition in bankruptcy.

On June 30, 2003, this Court conducted a trial to determine whether the debt owed to the Plaintiff should be deemed nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(B). During the trial, the Court heard testimony from the Debtor; Timothy Young, the agent of the Debtor who procured the financing for the subject debt; Michael Holland, the Vice–President for Aircraft Lending for the Plaintiff; Deborah Culler, the Senior Credit Underwriter for the Plaintiff; and Donald J. Mallette, a business partner of the Debtor with experience in the airline industry. The deposition of Mr. Keith Bentley, who provided accounting and consulting services to the Debtor, was also admitted into evidence.

It is undisputed that the Debtor did not disclose over $23 million worth of contingent liabilities in the April 30, 2001, Financial Statement submitted to the Plaintiff. Deborah Culler unequivocally testified that, had the existence of the $23 million worth of contingent liabilities been disclosed, the Plaintiff would not have made the subject loan.

The Financial Statement was also inaccurate in other respects. The Debtor had listed as an asset an ownership interest valued at $100,000 in a condominium in Fort Lauderdale, Florida. The Debtor admitted that said condo was purchased for the Debtor's mother and that he never had title to it and that it was never in his name. The Debtor also listed as an asset a Harley Davidson motorcycle. Debtor admitted that he had sold the motorcycle sometime prior to the time he presented the Financial Statement to Plaintiff.

While admitting the inaccuracies and omissions, the Debtor maintains that he had no intent to deceive the Plaintiff. The Debtor also questions whether the Plaintiff reasonably relied upon the Financial Statement in making the loan.

Section 523(a)(2)(B) of the Bankruptcy Code excepts from discharge certain debts arising out of the debtor's issuance of false financial statements and specifically provides as follows:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

.　　.　　.　　.　　.

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

.　　.　　.　　.　　.

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive(.)

11 U.S.C. § 523(a)(2)(B).

A plaintiff seeking an exception to discharge under Section 523(a)(2)(B) of the Code must prove all the elements by a preponderance of the evidence. *See Grogan v. Garner,* 498 U.S. 279, 286, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *Matter of Thirtyacre,* 36 F.3d 697, 700 (7th Cir.1994); *Matter of McFarland,* 84 F.3d 943, 946 (7th Cir.1996), *cert. denied,* 519 U.S. 931, 117 S.Ct. 302, 136 L.Ed.2d 220 (1996); *In re Morris,* 223 F.3d 548, 552 (7th Cir.2000). The failure of a plaintiff to prove any one of the above elements contained in Section 523(a)(2)(B) will result in a dismissal of the dischargeability complaint. Exceptions to discharge are to be strictly construed against the objector and liberally in favor of the debtor. *Gleason v. Thaw,* 236 U.S. 558, 35 S.Ct. 287, 59 L.Ed. 717 (1915); *Grogan, supra,* 498 U.S. at 285, 287, 111 S.Ct. 654. *See also Matter of Scarlata,* 979 F.2d 521, 524 (7th Cir.1992); *Matter of Zarzynski,* 771 F.2d 304, 306 (7th Cir. 1985).

As long as the statement is written, signed, adopted, or used by a debtor, the basic precondition concerning the writing requirement to the nondischargeability complaint under Section 523(a)(2)(B) is met. *See, e.g., In re Napier,* 205 B.R. 900, 905 (Bankr.N.D.Ill.1997); *In re Batie,* 995 F.2d 85 (6th Cir.1993); *In re Kerbaugh,* 162 B.R. 255 (Bankr.D.N.D.1993). No requirement exists for the use of an official form normally utilized by a creditor seeking to discharge a debt under Section 523(a)(2). *See, e.g., In re Howard,* 73 B.R. 694, 707 (Bankr.N.D.Ind.1987) (stating that the writing requirement is sufficiently broad enough to include any statement in writing made by the debtor and does not require a bank or financial institution ap-

plication). As long as the written statement represents the Debtor's financial condition, the statutory requirement of a statement in writing is met.

The first element of Section 523(a)(2)(B) is satisfied because the Debtor, on or about November 26, 2001, submitted the Financial Statement dated April 30, 2001, for use by the Plaintiff in determining whether to make the subject loan. Although dated April 30, 2001, the Financial Statement was offered as evidence of the Debtor's "current" financial condition.[1] The Financial Statement was received by the Plaintiff prior to the extension of credit.

■ A financial statement is materially false if the information offers a substantially untruthful picture of the financial condition of the debtor that affects the creditor's decision to extend credit. *Matter of Bogstad*, 779 F.2d 370, 375 (7th Cir.1985); *In re Bryson*, 187 B.R. 939, 962 (Bankr.N.D.Ill.1995). The measuring stick of material falsity is whether the financial institution would have made the loan if the debtor's true financial condition had been known. *Bogstad, supra*, 779 F.2d at 375; *see also In re Eckert*, 221 B.R. 40, 44 (Bankr.S.D.Fla.1998) (citing *Matter of Stratton*, 140 B.R. 720, 722 (Bankr.N.D.Ill. 1992)). A huge discrepancy in the actual net worth listed in a financial statement gives rise to an inference of material falsity. *See, e.g., Regency Nat. Bank v. Blatz*, 67 B.R. 88, 91 (E.D.Wis.1986).

■ Many decisions have also employed a more subjective "but for" analysis, which the Seventh Circuit describes as a "recurring guidepost" for determining materiality under Section 523(a)(2)(B). *Matter of Harasymiw*, 895 F.2d 1170, 1172 (7th Cir. 1990); *Bogstad, supra*, 779 F.2d at 375 (7th Cir.1985); *In re Bailey*, 145 B.R. 919, 930 n. 7 (Bankr.N.D.Ill.1992). Under that test, a creditor must establish that "but for" a material misrepresentation, it would not have extended money, property, services, or credit. *In re Grossman*, 174 B.R. 972, 984 (Bankr.N.D.Ill.1994).

■ The other test for materiality in the Seventh Circuit is the "substantial untruth test" where a statement "paints a substantially untruthful picture of a financial condition by misrepresenting information of the type which would normally affect the decision to grant credit." *Napier, supra*, 205 B.R. at 905–06.

■ Writings with pertinent omissions are deemed materially false under Section 523(a)(2)(B). *Bailey, supra*, 145 B.R. at 930; *Howard, supra*, 73 B.R. at 707. The failure to disclose contingent liabilities constitutes a materially false financial statement for dischargeability purposes pursuant to Section 523(a)(2)(B). *In re Wingo*, 113 B.R. 249 (W.D.Va.1989); *In re Guistolisi*, 61 B.R. 821 (Bankr.S.D.Fla. 1986). The omission of contingent liabilities is especially material when the debtor is sophisticated and consciously aware of the existence of the liability. *See Wingo, supra*, 113 B.R. at 252; *Guistolisi, supra*, 61 B.R. at 823. When the debtor is aware

---

**1.** The Plaintiff's Trial Exhibit # 13 evidencing that Aviation Finance required individuals to submit a "Complete Current Personal Financial Statement." Trial Transcript, Testimony of Timothy Young, at 88. (The testimony of Mr. Timothy Young affirmed the fact that the Debtor's financial statement was current by his testimony stating, "I am sure that I asked him if there was—if that was the current statement.") Trial Transcript, Testimony of Deborah Culler, at 141–42 (Deborah Culler testified that she received the Financial Statement as "current" upon receipt despite the fact that the Statement is dated April 30, 2001, because the Statement is presented as of the date it is actually submitted as a true and correct Financial Statement.)

of a contingent liability, knows it is substantial, realizes the personal nature of the liability, and recognizes it is a material factor in assessing the financial condition of the individual, a debtor is under a duty to disclose the contingent liability to a lender relying on a financial statement. *Id.*

■ Deborah Culler unequivocally testified at trial that the Plaintiff would not have extended credit to the Debtor in the amount of $1,575,560 to refinance the airplane had the true financial condition of the Debtor been made known. The Court found Ms. Culler highly credible and found her testimony worthy of significant weight. Inasmuch as the failure to disclose $23 million in contingent liabilities would have reversed the Plaintiff's decision to extend over $1.5 million dollars worth of credit to the Debtor, the Court finds the Financial Statement materially false. Plaintiff has met its burden under both the "but for test" and the "substantial untruth test".

■ Under Section 523(a)(2)(B)(iii) Plaintiff must prove reasonable reliance on the materially false written statement. *In re Kreps*, 700 F.2d 372, 376 (7th Cir.1983). In the Seventh Circuit, the reasonableness of a creditor's reliance on a materially false financial statement is to be determined on a case by case basis. *Morris, supra*, 223 F.3d at 553 (7th Cir.2000). To determine whether a creditor was reasonable in its reliance, a court must consider the totality of the circumstances. *Eckert, supra*, 221 B.R. at 44–45. Factors to be considered in making this determination include the following:

a. whether the debtor/creditor had a business relationship;

b. whether the creditor conducted a credit check;

c. whether the creditor examined the debtor's record in meeting his credit card debts;

d. whether the creditor had previous dealings with the debtor that produced a relationship of trust;

e. whether the debt was incurred for personal or commercial reasons;

f. whether there were any red flags that would have alerted an ordinary prudent lender to the possibility that the representations relied upon were not accurate;

g. whether a minimal investigation would have revealed the inaccuracy of the debtor's representation;

h. whether the debtor and creditor had a personal relationship;

i. the sophistication of the parties;

j. whether the creditor or debtor solicited the extension of credit; and

k. the length of time of any relationship.

*Eckert, supra*, 221 B.R. at 44–45, *citing In re Kahler*, 187 B.R. 508, 514–15 (Bankr. E.D.Va.1995).

■ No prior business relationship existed between the Plaintiff and the Debtor, so the Plaintiff cannot be accused of relying on a past relationship or history of trust with the Debtor rather than on his Financial Statement. A credit check was performed by the Plaintiff. [*See In re Ardelean*, 28 B.R. 299, 301 (Bankr.N.D.Ill. 1983), holding that the lending institution acted reasonably when a credit check was run and revealed no inconsistencies with the debtor's financial statement]. In fact, in this case, the Plaintiff's analysis of the Debtor's creditworthiness was extensive, thorough, and independently verified.

The instant debt involved the refinancing of the Citation airplane personally used by the Debtor. The loan documentation indicates that the Debtor is the primary

user of the collateral, the sole exception being occasional charters once or twice a year.

There were no "red flags" which would have alerted an ordinarily prudent lender to the possibility that the Financial Statement was inaccurate or incomplete. The Plaintiff utilized a Financial Statement indicating a substantial net worth (*i.e.*, $4.05 million), a Beacon score, an Equifax Credit Report, and tax returns for 1999 and 2000 to ascertain the creditworthiness of the Debtor. The Plaintiff thoroughly analyzed the documents submitted by the Debtor to obtain the loan. A creditor is entitled to rely on the information provided by a debtor, especially when the information is presented by a sophisticated borrower presenting information in a document typed, verified, adopted, and signed by the prospective borrower. Ms. Culler testified that the only contingent liability revealed in the Financial Statement consisted of the Citation owed by Martin Leasing that was duly listed as an asset and matched with a corresponding liability. Ms. Culler testified that she concluded that the Debtor was disclosing his contingent liabilities by stating, "It says that he includes assets that are Martin Leasing, so it looks like he is showing us that he has contingent liabilities and is putting them on his financial statement." Ms. Culler's conclusion was not unreasonable. Thus, no red flags regarding the Debtor's contingent liabilities are raised by the Financial Statement.

An investigation would not have revealed the existence of multiple guarantees executed by the Debtor. Again, the loan was made to the Debtor as the sole officer and director of a corporation he created for ownership of his airplane, and his personal creditworthiness was being examined. Nothing in the Financial Statement suggested that a further investigation of the Debtor's financial condition was warranted, especially considering the fact that Plaintiff reviewed tax returns, financial statements, and credit reports, all of which failed to arouse any suspicion or cause for concern.

The Plaintiff investigated the Debtor's financial condition, and the guarantees were not discovered. Disclosure by the Debtor was the sole manner that would have made the Plaintiff aware of the existence of the substantial contingent liabilities. No red flags existed to require the Plaintiff to inquire into additional obligations that the Debtor owed. *See Matter of Garman,* 643 F.2d 1252, 1260 (7th Cir. 1980), *cert. denied,* 450 U.S. 910, 101 S.Ct. 1347, 67 L.Ed.2d 333 (1981) (although a creditor is not entitled to rely upon an obviously false representation of the debtor, this does not require him or her to view each representation with incredulity requiring verification). *See also Guistolisi, supra,* 61 B.R. at 824 (in response to the debtor's argument that the lender was under an affirmative duty to independently verify at least some of the items in the financial statement, the court stated, "I disagree. Neither the statute, nor anything in its legislative history indicates that a lender is under a burden to verify a borrower's personal financial statement" especially when the statement appears complete).

The level of sophistication of the Debtor in this case is especially significant because the Debtor is an experienced businessman and medical doctor. The Debtor has 13 years of post high school education, has been engaged in the private practice of medicine since 1987, and he had been in the airplane business since 1990. The Debtor was extensively familiar with business loans and guarantees due to his extensive involvement in the aircraft industry, both domestically and internationally,

for over a decade. It was reasonable for the Plaintiff to expect the Debtor in this case to know that he was obligated to disclose his contingent liabilities in the loan application process.

In this case, the Debtor initiated the extension of credit. In early December of 2001, the Debtor solicited the services of Timothy Young of Aviation Finance in order to refinance the existing indebtedness on the Debtor's airplane giving rise to the instant debt. Thus, it was the Debtor, via his agent, and not the Plaintiff, who initiated the relationship involving the extension of credit. The Debtor asserts, but offers virtually nothing by way of evidence to prove, that the Plaintiff ignored the standard loan approval procedures and extended credit based on the close relationship between Timothy Young and Mike Holland. To the contrary, this case does not represent a scenario where the lender eagerly and carelessly provided credit to the Debtor based on something other than Debtor's creditworthiness as shown by his Financial Statement.

Based on the application of the factors, the Court finds that the Plaintiff justifiably and reasonably relied on the information submitted by the Debtor. Moreover, the sophistication of the Debtor coupled with the Plaintiff's diligent inquiry into the Debtor's financial condition justifies a finding that the Plaintiff reasonably relied on the Debtor's information provided in the loan application process.

 In the Seventh Circuit, an intent to deceive can either be proven through direct evidence, or logically inferred from a false representation that the debtor knows or should know will induce another to make a loan. *Matter of Sheridan,* 57 F.3d 627, 633 (7th Cir.1995); *In re Morris,* 230 B.R. 352, 360 (Bankr.N.D.Ill. 1999), *aff'd,* 240 B.R. 553 (N.D.Ill.1999), *aff'd,* 223 F.3d 548 (7th Cir.2000). A debt-

or's intent to deceive may also be demonstrated by showing reckless indifference to, or reckless disregard for, the accuracy of the information in a financial statement. *Napier, supra,* 205 B.R. at 907 (Bankr. N.D.Ill.1997); *Howard, supra,* 73 B.R. at 707 (finding an intent to deceive where a financial statement was recklessly made that omitted numerous debts that later were listed in the debtor's schedules in his voluntary petition). An intent to deceive can also be found because the debtor, an experienced businessman, knew that his financial statement inaccurately reflects his financial condition. *See In re Hodges,* 116 B.R. 558, 561 (Bankr.N.D.Ohio 1990). The omission of a substantial contingent liability which could not have merely been an oversight serves as evidence of an intent to deceive a lender. *Guistolisi, supra,* 61 B.R. at 823; *Wingo, supra,* 113 B.R. at 252.

 A rebuttable presumption of an intent to deceive arises upon the publishing of a materially false financial statement. *In re Jones,* 88 B.R. 899 (Bankr. E.D.Wis.1988). An intent to deceive via material omissions must have arisen at the time of the time the transaction was entered into by the parties. *Napier, supra,* 205 B.R. at 907. Thus, the Court must focus on the intent at the time of the loan.

 In this case, the omission of the contingent liabilities of over $23 million was not an oversight by the Debtor. In his own testimony, the Debtor indicated that he was aware of the significance of the guarantees and that he did not disclose them because the ventures which he had guaranteed were doing well and were guaranteed by other individuals of substantial means and earning power. This statement, in and of itself, proves beyond cavil that the failure to disclose the guarantees was not an oversight. It well may

244

be that, at the time he failed to disclose the contingent liabilities, the Debtor did not believe that he would likely be called upon to satisfy them. However, that mistaken belief did not alter the fact that the Debtor intentionally deceived the Plaintiff by failing to make such disclosure.

Based on the totality of the facts, circumstances, and applicable law, Plaintiff reasonably relied, to its detriment, on the Debtor's materially false written Financial Statement, which the Debtor published with an intent to deceive. Because the Plaintiff has carried its burden of proof on every element in Section 523(a)(2)(B), the

Court finds that the Complaint should be granted and the debt should be excepted from the Debtor's discharge. The amount of the judgment will be determined in a subsequent hearing.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.