In re Tammy L. NAPIER, Debtor.

Chuck PHILLIPS, Plaintiff,

v.

Tammy L. NAPIER, Defendant.

Bankruptcy No. 96 B 00559.
Adversary No. 96 A 00362.

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

March 3, 1997.

Chuck Phillips, Lockport, IL, and Orland Park, IL, pro se.

David R. Gervais, Crystal Lake, IL, for Defendant.

## MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

This matter comes before the Court on the complaint of the Plaintiff, Chuck Phillips (the "Creditor"), for a determination that the judgment debt owed him by the Defendant, Tammy L. Napier (the "Debtor"), is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(B). Additionally, the Debtor has requested an award of attorney's fees and costs under 11 U.S.C. § 523(d). For the reasons set forth herein, the Court hereby grants judgment in favor of the Debtor and finds the debt dischargeable. The Debtor's motion for directed findings pursuant to Federal Rule of Bankruptcy Procedure 7052 is granted in part. The Court denies the Debtor's request for fees and costs. Each party should bear its own fees and costs.

### I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 and General Rule 2.33(A) of the United States District Court for the Northern District of Illinois. It is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

### II. FACTS AND BACKGROUND

The subject debt arose out of a pre-petition leasehold of an apartment for which the Creditor was the landlord and the Debtor was the tenant. The focus of the Creditor's claim that the debt is non-dischargeable is on a rental application submitted by the Debtor to the Creditor on August 18, 1994. See Plaintiff's Exhibit No. 1. According to the Creditor, the application is a standard form he has used for years for his apartment building in Oak Forest, Illinois. The information supplied therein by prospective tenants is reviewed and verified in part and a credit report is obtained for each applicant.

The first section of the application contains spaces to supply background information on the applicant's identification, current and previous addresses and employment, income from "weekly gross earnings" and "additional income." See Plaintiff's Exhibit No. 1. The second section contains places for similar information about the applicant's spouse. Id. The third section provides blanks for credit references and financial institutions wherein applicants maintain checking and savings accounts. Id. The fourth section has questions regarding the number of occupants, pets, and other miscellaneous information from the applicant. Id. The application form concludes with a certification of the truth and accuracy of the information supplied and an agreement to forfeit the deposit if any of the information is false. Id.

It is undisputed that the Debtor completed the subject application in her own handwriting and signed same. She disclosed that she had previously filed a bankruptcy case to the Creditor's agent, who made a marginal note thereof, before submitting the completed application to the Creditor for his review, investigation, and subsequent decision to lease the apartment to the Debtor for an initial term of one year. See Plaintiff's Exhibit No. 3 and Defendant's Exhibit No. 1.

The critical information upon which the Creditor relied in deciding to rent to the Debtor was the contents of a credit report, which he subsequently obtained, and the first portion of the application detailing the Debtor's "weekly gross earnings" and "additional income." Those portions of the application were filled in with the respective amounts of "$495.00" and "$300.00 mo" with the latter explained as "child support." See Plaintiff's Exhibit No. 1. These entries are at the heart of this matter and by which the Creditor contends the Debtor obtained the lease and related heating credit from him through a false financial statement violative of § 523(a)(2)(B).

The Debtor maintains those representations regarding her income were not materially false, nor did she have the requisite intent to defraud the Creditor because the application did not request her weekly salary from her employment. Rather, she testified that at that time, she was also receiving an additional $125.00 per week from her father to defray her living expenses. The Debtor's annual income for 1994 from her employment, as disclosed on her federal and state income tax returns (Plaintiff's Exhibit Nos. 8 and 9 and Defendant's Exhibit No. 3) and supporting W–2 forms (Plaintiff's Exhibit

No. 10), showed a substantially lower gross earned income than that disclosed on the application. Her employer's payroll records showed varying gross incomes for the bi-weekly pay periods both before and after the application. *See* Plaintiff's Exhibit Nos. 12 and 13. Her payroll stub for the pay period ending on August 6, 1994, prior to the submission of the application, showed an average gross weekly wage of $393.97. *See* Plaintiff's Exhibit No. 11 and Defendant's Exhibit No. 4. According to the Debtor, she calculated the total $495.00 "weekly gross earnings" to be the $300.00 from her employment, plus $125.00 from her father, and $75.00 from her ex-husband for child support. *See* Plaintiff's Exhibit 15, p. 3 (Answers to Interrogatories 14 and 15). The controller of the Debtor's employer testified that her average weekly gross earnings from her employment at the time of application were at the highest level of the calendar quarter, with the Debtor's average weekly wages much lower for the first and second calendar quarters of 1994 in the $200–300 weekly range.

The Debtor's father corroborated her testimony that he had subsidized her living expenses since she and her former husband separated in 1991. At a minimum, in 1994 he gave her $250.00 every two weeks. According to the Debtor, she so orally advised the Creditor's agent. After the Debtor was shown the apartment and obtained the application form from the agent, she discussed it with her father and then filled it out. According to her, there was no place on the application for the separate disclosure of the financial support from her father, notwithstanding her separate itemization of the child support.

It is the Debtor's failure to specifically disclose the subsidy from her father that the Creditor alleges led him to erroneously compute that the Debtor had sufficient earned income to be able to afford the apartment. *See* Plaintiff's Exhibit No. 2. The credit report disclosed some of the Debtor's past adverse credit information and corroborated her voluntary disclosure of a previous bankruptcy. The Creditor verified the Debtor's employment status, but was unable to verify the Debtor's current and past employment income. Notwithstanding, he decided to lease the apartment to her. At some point thereafter, the lease payments and related heat charges went into arrears. The Creditor instituted a state court action to recover possession of the premises and damages from the Debtor and received both on December 14, 1995 under the terms of an order for possession and an award of $1,944.00 plus costs. *See* Plaintiff's Exhibit No. 7.

### III. APPLICABLE STANDARDS

The party seeking to establish an exception to the discharge of a debt bears the burden of proof. *Selfreliance Fed. Credit Union v. Harasymiw (In re Harasymiw),* 895 F.2d 1170, 1172 (7th Cir.1990); *Banner Oil Co. v. Bryson (In re Bryson),* 187 B.R. 939, 961 (Bankr.N.D.Ill.1995). The United States Supreme Court has held that the burden of proof required to establish an exception to discharge is a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 291, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991); *see also In re McFarland,* 84 F.3d 943, 946 (7th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 302, 136 L.Ed.2d 220 (1996); *In re Thirtyacre,* 36 F.3d 697, 700 (7th Cir. 1994). To further the policy of providing a debtor a fresh start in bankruptcy, "exceptions to discharge are to be construed strictly against a creditor and liberally in favor of a debtor." *Goldberg Secs., Inc. v. Scarlata (In re Scarlata),* 979 F.2d 521, 524 (7th Cir.1992) (quoting *In re Zarzynski,* 771 F.2d 304, 306 (7th Cir.1985)). *Accord Meyer v. Rigdon,* 36 F.3d 1375, 1385 (7th Cir.1994).

Section 523 of the Bankruptcy Code enumerates specific exceptions to the dischargeability of debts. The Creditor contends that his debt arises from fraudulent conduct of the Debtor and as such is non-dischargeable under § 523(a)(2)(B), which provides in relevant part:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing or credit, to the extent obtained by—

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's ... financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive.

11 U.S.C. § 523(a)(2)(B). To prevail on a complaint under § 523(a)(2)(B), the Creditor must prove five elements: (1) the Debtor made a statement in writing; (2) the statement was materially false; (3) the statement concerned the Debtor's financial condition; (4) in making the misrepresentation, the Debtor had an intent to deceive the Creditor; and (5) the Creditor actually and reasonably relied upon the misrepresentation. *See In re Sheridan*, 57 F.3d 627, 633 (7th Cir.1995); *Harasymiw*, 895 F.2d at 1172; *In re Bogstad*, 779 F.2d 370, 372 (7th Cir.1985).

## IV. *DISCUSSION*

A. **Whether the debt is dischargeable under § 523(a)(2)(B)**

■ Two of the five elements needed to prove the Creditor's claim under § 523(a)(2)(B) are undisputed and were shown by the documentary evidence admitted at trial: that the Debtor made a statement in writing concerning her financial condition. The application was submitted by the Debtor to the Creditor after the Debtor filled in the blanks with the requested information in her own handwriting. For purposes of § 523(a)(2), a written statement need not be either a formal balance sheet or a profit and loss statement. *See First Int'l Bank v. Kerbaugh (In re Kerbaugh)*, 162 B.R. 255, 261 (Bankr.D.N.D.1993); *Household Fin. Corp. v. Howard (In re Howard)*, 73 B.R. 694, 702 (Bankr.N.D.Ind.1987). The application contained statements about the Debtor's employment, weekly gross earnings, and additional income. Thus, the application constitutes a statement in writing concerning the Debtor's financial condition. Thereby, the Debtor was able to obtain the lease of the apartment, which included the Creditor's short term extension of credit for heat supplied to the unit. A lease constitutes property within the meaning of

§ 523(a)(2). *See S.P. Inv. Ltd. Partnership v. O'Connor (In re O'Connor)*, 145 B.R. 883, 888–90 (Bankr.W.D.Mich.1992). That the lease involved in *O'Connor* was for commercial property as opposed to a residential apartment lease involved in the instant case is of no consequence or distinction, as argued by the Debtor, because the statute contains no such limitation. The Court finds that the lease was an interest in property for purposes of § 523(a)(2)(B), for which the Debtor submitted the application to the Creditor containing certain financial information respecting her financial condition.

■ Next, the Creditor must demonstrate that the application was materially false. The Debtor contends that her earnings from her employ, when combined with the financial support from her father, brought her "weekly gross earnings" up to the level reflected on the application, and that she truthfully disclosed as a separate item the amount of child support she was receiving in the "additional income" and "explain" blanks. The Creditor contends that the monies from the Debtor's father were never separately disclosed, and therefore, he was misled into believing that the Debtor's gross weekly earnings were all from her employment. The Creditor concludes that portion of the application was materially false.

■ Courts have recognized two different tests for determining whether a statement is materially false. Under the first, known as the "substantial untruth" test, a statement is materially false if it "paints a substantially untruthful picture of a financial condition by misrepresenting information of the type which would normally affect the decision to grant credit." *Bryson*, 187 B.R. at 962 (citations omitted). The second test is known as the "but for" test and requires a creditor to prove that, but for the material misrepresentation, no credit would have been extended. *Id.* The Seventh Circuit has not determined which test to apply. *See Harasymiw*, 895 F.2d at 1172 (noting the dispute regarding which test is appropriate, but not resolving it). Although the court in *Harasymiw* noted cases defining materiality under § 523(a)(2)(B) as "an important or sub-

stantial untruth," the court also referred to the "but for" test as a "recurring guidepost." *Id.* (citing *Bogstad,* 779 F.2d at 375). Bankruptcy judges in this district have utilized both tests. *See Westbank v. Grossman (In re Grossman),* 174 B.R. 972, 984 (Bankr. N.D.Ill.1994) (applied "but for" test); *Community Bank of Homewood–Flossmoor v. Bailey (In re Bailey),* 145 B.R. 919, 930 n. 7 (Bankr.N.D.Ill.1992) (applied "substantial untruth" test); *Bryson,* 187 B.R. at 962 (noted different tests, but did not choose which one to apply).

Under either test, the Court finds that the Creditor has demonstrated this element by a preponderance of the evidence. The Creditor's testimony was unequivocal that he would not have leased the apartment to the Debtor had he known that the Debtor's gross income included the subsidy from her father because a prospective tenant's earned income from employment was one of the two critical factors he used to make the determination of whether or not to rent apartments to applicants. That the Debtor chose to lump her highest average weekly gross wages with the support from her father to arrive at the amount she filled in for "weekly gross earnings" had the effect of leading the Creditor to infer that the amount was derived from her employment. As such, it was materially false because of her failure to indicate somewhere on the application, such as the "additional income" and "explain" blank portions, that she was receiving the subsidy from her father. A fair reading of the application leaves the impression that the Debtor's gross weekly earnings from her employment were $495.00, rather than the substantially lower figure her average weekly wages in fact were. That she had previously separately itemized her child support, but not the parental subsidy, does not vitiate the material omission of the latter as a separate item or the resultant apparent distortion of her disclosed income from her employment. The Debtor should have noted that her weekly gross earnings included money from her father as well as her employer. Therefore, the Court finds that the application was materially false because it failed to disclose that the reported weekly gross earnings included the parental subsidy.

Next, the Creditor must prove by a preponderance of the evidence that he actually and reasonably relied on the misrepresentation. *See Field v. Mans,* —— U.S. ——, ——, 116 S.Ct. 437, 442, 133 L.Ed.2d 351 (1995) (§ 523(a)(2)(B) expressly requires reasonable reliance). The reasonableness of a creditor's reliance on financial information provided by a debtor must be judged by examining the particular facts and circumstances of each case. *Harasymiw,* 895 F.2d at 1173; *Bogstad,* 779 F.2d at 372 n. 4. Three factors should be examined to determine whether a creditor's reliance on a document was reasonable: (1) the creditor's standard practices in evaluating credit worthiness; (2) the standards or customs of the creditor's industry in evaluating credit worthiness; and (3) the surrounding circumstances existing at the time of the debtor's application for credit. *Grossman,* 174 B.R. at 984 (citations omitted). Inaccuracies on a financial statement, however, do not render an obligation nondischargeable in bankruptcy, even assuming the statement was materially false, if the creditor's reliance on the statement was neither substantial nor a significant factor in its decision to extend credit. *See Mazzucco Constr. Co. v. Kubinski (In re Kubinski),* 71 B.R. 267 (N.D.Ill.1987).

The Court finds that the Creditor has met his burden of proof on this element. The Creditor testified at length as to his standard practice in evaluating the information contained in lease applications. The income portions contained therein, along with a separately obtained credit report, were utilized as the two critical components upon which he decided whether or not to rent an apartment to an applicant. The Creditor also testified that the procedure utilized was in accordance with the prevailing standards or customs of the industry in the area by other landlords. The Creditor's spouse substantially corroborated this evidence. Moreover, all relevant surrounding circumstances existing at the time of the Debtor's application were brought out at trial. The Creditor contacted the Debtor's employer to verify her current employment and longevity on the job and asked about her current compensa-

tion, but the employer declined to provide such confidential information, leaving the Creditor to rely on what the Debtor had disclosed. Thus, the Court finds that, viewed both objectively and subjectively, the Creditor reasonably and actually relied upon the Debtor's representation of her income in the application. The Creditor was lulled into believing that the Debtor had a substantially higher earned income than she actually was earning.

 Finally, the inquiry turns to the critical last element of whether or not the Debtor had the requisite scienter or fraudulent intent to deceive when she made and submitted the application to the Creditor. A party can prove an intent to deceive through direct evidence. *Sheridan,* 57 F.3d at 633. Alternatively, wrongful intent may "logically be inferred from a false representation which the debtor knows or should know will induce another to make a loan." *Id.* (citation omitted). A debtor's intent to deceive may also be demonstrated by proving reckless indifference to, or reckless disregard for, the accuracy of the information in the financial statement. *Grossman,* 174 B.R. at 984 (citing *Bailey,* 145 B.R. at 931). "[W]here ... a person knowingly or recklessly makes a false representation which the person knows or should know, will induce another to make a loan, intent to deceive may logically be inferred." *Northern Trust Co v. Garman (In re Garman),* 643 F.2d 1252, 1260–61 (7th Cir.1980) (citation omitted). The debtor's intent to deceive may also be inferred from the surrounding circumstances. *Bryson,* 187 B.R. at 961 (citation omitted). The creditor, however, has the burden of proving evidence from which such an inference can be drawn. *Id.*

 Any such intent must have existed at the time of the submission of the application and the Creditor's extension of the heating credit and leasing of the apartment to the Debtor. Her subsequent failure to pay all rent reserved under the lease, heating bills, and claimed damages to the unit are insufficient to prove the requisite scienter at the time the transaction was entered into between the parties. *See Butler Mfg. Co., Inc. v. Vissers (In re Vissers),* 21 B.R. 638, 640

(Bankr.E.D.Wis.1982); 1 *Ginsberg & Martin on Bankruptcy* § 11.06[D] at 11–55—56 (4th ed. 1996); 3 *Norton Bankruptcy Law and Practice 2d,* § 47:15 at 47–29 (1994).

The Debtor testified she intended the Creditor to rely on the information disclosed in the application, and in her opinion, the information contained therein was fair and accurate. She also testified that prior to entering into the lease agreement with the Creditor, he called her and discussed her application and the credit report he had obtained about her, but he did not inquire further about her employment, nor did he ask about the subsidy from her father. Moreover, the Creditor did not disclose that the Debtor's gross earning from her current employment was one of the critical factors by which he made the decision of whether to lease an apartment to a prospective tenant, although there was some discussion of the results of the credit report. According to the Debtor, she asked her father what she should put down for earnings and he told her to use the figure of $495.00 per week, which included his financial support. She listed the child support received from her former spouse separately because that was what she usually did, and there was no separate place on the application to list the parental subsidy.

The Debtor testified that she voluntarily disclosed to the Creditor's agent both the parental subsidy and her prior bankruptcy. This is significant to show her state of mind and lack of any fraudulent intent by omission of relevant information. The agent made a notation on the application of "Bankruptcy," but no similar note was made of the parental subsidy. Conspicuously absent was any testimony from the Creditor's agent. Thus, there is no evidence in the record to rebut or corroborate the Debtor's testimony that she disclosed to the agent the parental subsidy. The Creditor testified that his agent did not disclose to him that the Debtor was receiving financial support from her father, although her prior bankruptcy was noted and confirmed via the credit report.

The Court has no reason to conclude that either party lacks credibility. Although the application should have noted the parental

subsidy to be fully accurate, complete and not misleading, the average amount thereof was included within the amount reported for weekly gross earnings. Also, the application bears the agent's note about the Debtor's prior bankruptcy, about which there was no question or blank on the application. The Debtor's testimony was substantially corroborated by her father's testimony. Hence, the Court is left with the firm conclusion from the totality of the evidence that the Debtor lacked the requisite intent to deceive the Creditor, although it was negligent for the Debtor not to separately itemize the parental subsidy along with the child support. In sum, the Court finds that the Creditor has failed to demonstrate this requisite intent element under § 523(a)(2)(B). Therefore, the Court finds the subject debt dischargeable.

**B. Whether the Debtor's request for fees and costs under § 523(d) should be granted**

 The Debtor seeks attorney's fees and costs under § 523(d) which provides:

If a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section, and such debt is discharged, the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding if the court finds that the position of the creditor was not substantially justified, except that the court shall not award such costs and fees if special circumstances would make the award unjust.

11 U.S.C. § 523(d). The purpose of § 523(d) is to discourage creditors from initiating false financial statement exception to discharge actions in hopes of obtaining a settlement from an honest debtor anxious to save attorney's fees. Such practices impair a debtor's fresh start. See H.R.Rep. No. 595, 95th Cong., 1st Sess. 365 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 80 (1978), 1978 U.S.Code Cong. & Admin. News, pp. 5787, 5865, 5963, 6320.

 In order to prevail on a motion for attorney's fees, the Debtor must prove that: (1) the Creditor requested a determina-

tion of dischargeability; (2) the debt is a consumer debt; and (3) the debt was discharged. See American Savs. Bank v. Harvey (In re Harvey), 172 B.R. 314, 317 (9th Cir. BAP 1994); FCC Nat. Bank v. Dobbins, 151 B.R. 509, 511 (W.D.Mo.1992); Turning Stone Casino v. Vianese (In re Vianese), 195 B.R. 572, 576 (Bankr.N.D.N.Y.1995). Once the Debtor establishes these elements, the burden shifts to the Creditor to show that his actions were substantially justified. Dobbins, 151 B.R. at 511 (citing Chrysler First Fin. Servs. Corp. v. Rhodes (In re Rhodes), 93 B.R. 622, 624 (Bankr.S.D.Ill.1988)). "Substantially justified" means more than frivolous, or undeserving of sanctions. FCC Nat. Bank/First Card v. Friend (In re Friend), 156 B.R. 257, 262 (Bankr.W.D.Mo.1993). The requirements for substantial justification are: (1) a reasonable basis in law for the theory it propounds; (2) a reasonable basis in truth for the facts alleged; and (3) a reasonable connection between the facts alleged and the legal theory advanced. America First Credit Union v. Shaw (In re Shaw), 114 B.R. 291, 295 (Bankr.D.Utah 1990); Friend, 156 B.R. at 262. The Seventh Circuit has recently noted in dicta that the provisions of § 523(d) are the "single instance in which a prevailing debtor may recover the fees incurred in a dischargeability action—where the creditor's challenge to the dischargeability of a consumer debt was not substantially justified." In re Sheridan, 105 F.3d 1164, 1167 (7th Cir.1997). Moreover, an award of fees shall not be permitted if any special circumstances exist which would make the award unjust. Dobbins, 151 B.R. at 511 n. 3.

 Turning to the matter at bar, it is undisputed that the Creditor requested a determination of dischargeability under § 523(a)(2)(B). Further, the debt is a "consumer debt" inasmuch as the debt was incurred by the individual Debtor primarily for personal, family, or household purpose. See 11 U.S.C. § 101(8). Moreover, the debt was found dischargeable as the Creditor failed to establish all elements of his claim by a preponderance of the evidence. Although the Debtor lacked the requisite fraudulent intent to deceive, the Court finds that the position

of the Creditor was substantially justified. Moreover, there are special circumstances that would make the award of costs and fees unjust—namely, that the parental subsidy was orally disclosed by the Debtor to the Creditor's agent, but not disclosed by the agent to the Creditor. The better exercise of the Court's discretion is to require each party to bear its own costs and fees incurred. Hence, the Debtor's request is denied.

## V. *CONCLUSION*

For the foregoing reasons, the Court grants judgment in favor of the Debtor and finds the debt dischargeable. The Debtor's motion for directed findings under Bankruptcy Rule 7052 is granted in part. The Debtor's request for fees and costs under § 523(d) is denied. Each party should bear its own fees and costs.

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.