In re Richard L. PERK, Debtor.

The HUNTINGTON NATIONAL BANK OF INDIANA, Plaintiff,

v.

Richard L. PERK, Defendant.

Bankruptcy No. 97–821–RLB–7.
Adversary No. 97–141.

United States Bankruptcy Court,
S.D. Indiana,
Indianapolis Division.

March 20, 1998.

Stephen L. Flint, Indianapolis, IN, for plaintiff.

Richard L. Perk, Carmel, IN, for defendant/debtor pro se.

### ENTRY ON MOTION FOR SUMMARY JUDGMENT

ROBERT L. BAYT, Bankruptcy Judge.

This matter is before the Court on the Motion for Summary Judgment ("Motion for Summary Judgment"), filed by The Huntington National Bank of Indiana, n/k/a The Huntington National Bank (the "Bank") on November 24, 1997. Richard L. Perk (the "Debtor") filed a response to the Motion for Summary Judgment ("Response") on December 9, 1997. The Court, having reviewed the Motion for Summary Judgment, the Response, and the affidavits of the parties, now makes the following Entry.

#### Facts

The Debtor filed a petition under Chapter 7 on January 28, 1997. Prior to the petition filing, in July or August of 1994, the Debtor applied to the Bank for a personal line of credit (the "Line of Credit"). The Line of Credit was issued to the Debtor on September 7, 1994, in the amount of $50,000.

As part of his loan application to the Bank, the Debtor submitted a personal financial statement dated August 31, 1994 (the "Financial Statement"). In the Financial Statement, the Debtor asserted that he had a net worth of $1,713,630, and that he owned the following properties:

| | |
|---|---:|
| Cash on hand and in banks | 73,000 |
| Accounts receivable | 52,300 |
| Listed securities | 236,224 |
| Unlisted securities | 12,800 |
| Residence | 444,000 |
| Diamonds, watches, rings | 60,000 |
| Furniture, antiques, Oriental rugs, paintings | 1,262,000 |
| Life insurance, cash value | 50,000 |
| Autos | 75,000 |
| Tax free bonds | 135,000 |

At the first meeting of creditors, the Debtor was examined by the Trustee, and testified under oath as follows with respect to his financial situation at the time of the 1994 loan transaction:

FLINT   Mr. Perk, I have a financial statement from you dated August 31, 1994. Under the heading jewelry and personal property, lists diamonds, watches, rings, etc., valued at $60,000.00.

PERK   Diamonds, watches, rings, etc., valued at $60,000.00? That was a statement that I made for your bank, for Huntington Bank, I believe, if you're refereeing (sic) to that? And I don't have it in front of me, I don't know what ... ah, I have not sold anything or have not given anything away. I don't know how it could have been that high.

FLINT   This is your financial statement?

PERK   That certainly is mine.

FLINT   Is that your signature?

PERK   Absolutely. Yes, sir.

FLINT   I would then ask about furniture, antiques, oriental rugs and paintings, valued at $1,262,000.

PERK   Well, that's ... ah ... doesn't exist, sir.

FLINT   Did it exist in 1994?

PERK   I ... I .. the ... ah ... I think that statement might be exaggerated.

FLINT   By how much?

PERK   I can't tell you, sir, I don't know how much. That statement—I made that statement a long time ago. I'm sorry to say that I was trying desperately to make this project work. I spent my entire savings, everything I could beg, borrow or steal, from my wife, from my children, from my insurance ... everything on this project to make it work. I had five investors that were friends of mine that also invested in this project. I tried desperately to continue. If I've told some white lies, I've told some white lies. That's all I can say to you, sir.

FLINT   Was there ever furniture, antiques, oriental rugs and paintings worth anything remotely approaching one and a quarter millions dollars?

PERK   No, sir.

　 ....

GRESK On your financial statement, when you said you had various diamonds, watches, rings on 8/31/94, valued at $60,000.00, did you ... you indicated that you had not disposed on [sic] any diamonds, watches or rings.

PERK I have not disposed ... I didn't have them, sir.

GRESK OK. Do you have homeowner's insurance that would have listed these items?

PERK Yes. If I would have owned them, I would have ... I don't have them.

GRESK Are you saying you never had them at all?

PERK I don't. I don't have them.

### Analysis

In the complaint filed by the Bank ("Complaint"), the Bank alleges that the debt it is owed is non-dischargeable pursuant to Section 523(a)(2)(B),[1] because the Debtor obtained the Line of Credit by submitting a false financial statement to the Bank. In the Motion for Summary Judgment, the Bank argues that there are no facts in issue, and that it is entitled to judgment as a matter of law.

■ . The Debtor argues in his Response that the Bank's reliance on his Financial Statement was not reasonable, and that accordingly, the debt he owes to the Bank should not be declared non-dischargeable under Section 523(a)(2)(B). According to the

Debtor, the Bank should have investigated the truth of the assertions he made regarding his financial situation at the time of the 1994 loan transaction.

### a) The Evidence Before the Court

The Court first notes that the Debtor has submitted no affidavits or other evidence to support his argument that the Bank's reliance on his Financial Statement was not reasonable. The Debtor makes a bald statement that the Bank did not reasonably rely on his Financial Statement, but the Debtor has provided no evidence by way of affidavit or otherwise to prove that the Bank should have known or suspected that the Financial Statement was inaccurate.[2] Bankruptcy Rule 7056(e) provides that if an adverse party (here, the Debtor) does not submit *evidence* to support the adverse party's argument against summary judgment, summary judgment should be granted.

(e) .... *When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's response,* but the adverse party's response, by affidavits or as otherwise provided in the rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judg-

---

1. 11 U.S.C. Section 523(a)(2)(B) provides that a debt for monies obtained by submitting a false financial statement to a lender is non-dischargeable:

   (a) A discharge under section 727 ... does not discharge an individual debtor from any debt—
   ....
   (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
   ....
   (B) use of a statement in writing—
   (i) that is materially false;
   (ii) respecting the debtor's ... financial condition;
   (iii) on which the creditor ... reasonably relied; and
   (iv) that the debtor caused to be made or published with intent to deceive.

2. In the Response, the Debtor alleges that the Bank failed to take reasonable care by, *inter alia,* "[I]gnoring [the Debtor's] letter of August, 1996 stating that his business project had failed,

"[c]ontinuing a business relationship with [the Debtor] from May, 1995 to October, 1996" ", and "[f]ailing to ask for updated financial information from August, 1994 until March, 1997".

Because Section 523(a)(2)(B) explicitly provides that a debt is non-dischargeable only to the extent *obtained by* a false financial statement, the afore-mentioned items cannot support the Debtor's argument that the Bank's reliance was not reasonable. Any statement the Debtor made to the Bank after he obtained the Line of Credit is not relevant to the analysis here, because it could not have been a factor in influencing the Bank to make, or to not make, the loan to the Debtor in August of 1994. Similarly, factors such as the Debtor's 1996 letter to the Bank, the parties' post–1994 business relationship, and the Bank's failure to ask for information after August of 1994, are not relevant to determining the reasonableness of the Bank's reliance in August and September of 1994.

ment, if appropriate, shall be entered against the adverse party.

(emphasis added).

### b) Reasonable Reliance

 The Seventh Circuit discussed the "reasonable reliance" standard in *Mayer v. Spanel*, 51 F.3d 670 (7th Cir.1995). The Seventh Circuit held that where there are no red flags to suggest that a debtor has made a false statement, the creditor has no duty to investigate the truth of the debtor's statements.

> 'Reliance' is an element of fraud, but reliance in fact does not lose its status in law just because the victim is careless. A 'reliance' requirement plays a different role. It excludes recovery if the investor knows or suspects the truth. Reliance means the conjunction of a material misrepresentation with causation in fact.

*Mayer v. Spanel*, 51 F.3d 670, 676 (7th Cir. 1995) *Accord In re Kerbaugh*, 162 B.R. 255 (Bankr.D.N.D.1993) (no duty to investigate); *In re Myers*, 124 B.R. 735 (Bankr.S.D.Ohio 1991)(no duty to investigate).

Here there were no red flags to alert the Bank that the Debtor had made materially false statements on his Financial Statement. No evidence has been presented by the Debtor that the Bank should have known or suspected that the Debtor's Financial Statement was inaccurate, or that would have triggered a reasonable person to investigate the accuracy of the Financial Statement. The lack of any red flags points to the conclusion that the Bank did not have a duty to investigate the truth of the Debtor's assertions in his Financial Statement.

The Court further notes that unlike the typical consumer debtor, this Debtor was a business person at the time of the 1994 loan transaction. The Financial Statement in issue here was typed by the Debtor, and was not a form that the Creditor supplied.

It is clear from the Debtor's testimony at the first meeting of creditors, that the Debtor *wanted* the Bank to rely on the Financial Statement in assessing the Debtor's creditworthiness, *without* investigating whether the Debtor actually owned the assets he listed on his Financial Statement. Had the Bank required an inventory or appraisal of the Debtor's assets, presumably the loan application would have been denied.

Taking into account the totality of the circumstances, it is the conclusion of the Court that the Bank's reliance on the Debtor's Financial Statement in August and September of 1994 was reasonable. The Court further concludes that the other elements of Section 523(a)(2)(B) non-dischargeability have been met, or are not in dispute. Therefore, the Court concludes that the debt owed to the Bank is non-dischargeable pursuant to Section 523(a)(2)(B).

IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED that the debt owed by Richard L. Perk to The Huntington National Bank is non-dischargeable pursuant to 11 U.S.C. Section 523(a)(2)(B).