In re Thien & Kieu LE, Debtors.

BANK OF NEW YORK, Plaintiff,

v.

Thien & Kieu LE, Defendants.

Bankruptcy No. 97–13629–BH.
Adversary No. 97–1260–BH.

United States Bankruptcy Court,
W.D. Oklahoma.

July 14, 1998.

Theodore P. Gibson, Tips & Gibson, Tulsa, OK, for plaintiff.

Kenneth C. McCoy, Oklahoma City, OK, for defendants.

### SUPPLEMENTAL MEMORANDUM OF DECISION AND ORDER AWARDING DEFENDANTS' COSTS AND ATTORNEY'S FEES

RICHARD L. BOHANÓN, Bankruptcy Judge.

■ The defendants seek a judgment awarding them their attorney's fees and costs pursuant to 11 U.S.C. § 523(d) which provides:

If a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section, and such debt is discharged, the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding if the court finds that the position of the creditor was not substantially justified, except that the court shall not award such costs and fees if special circumstances would make the award unjust.

The request concerns plaintiff's complaint for an exception to the defendants' discharge under section 523(a)(2)(A) of the Bankruptcy Code, alleging that the defendants fraudulently used the credit card which the plaintiff issued to them.

The chronology of the case and the adversary proceeding indicates that:

- when this Chapter 7 case was filed on April 16, 1997, Kieu Le did not list the plaintiff as a creditor, although Thien Le did do so;

- the meeting of creditors pursuant to section 341 of the Bankruptcy Code was conducted on May 21, 1997, and the plaintiff did not attend;

- the complaint, naming both Thien Le and Kieu Le as defendants, was filed on July 21, 1997, the last day permitted by Fed. R. Bankr.P. 4007(c);

- the defendants answered and a scheduling order was entered setting the trial for December 17, 1997, and mandating the final pre-trial order to be filed court by December 10, 1997;

- the defendants served their witness and exhibit list on November 6, 1997;

- the plaintiff did not file a pre-trial order nor did it serve a witness and exhibit list;

- on December 15, 1997, the plaintiff moved to continue the trial and, over the defendants' objection, it was continued to February 18, 1998;

- on December 19, 1997, defendants submitted a proposed pre-trial order;

- the plaintiff failed to file the final pre-trial order, which was due February 11, 1998, nor did the plaintiff file a witness and exhibit list for this trial date;

- on February 16, 1998, plaintiff notified defendants it intended to dismiss its complaint and, consequently, the trial was stricken;
- on March 26, 1998, the defendants filed their motion for attorneys' fees and costs;
- on April 1, 1998, by joint stipulation, the complaint was dismissed, and the debt was discharged;
- on April 30, 1998, a hearing was held on defendant's motion for attorneys' fees and costs.

The plaintiff did not offer evidence of any discovery at the hearing, did not submit the initial pre-trial order as required by local rule before either the December or February trial dates,[1] and did not serve its list of witnesses and exhibits as required by the scheduling order before either the December or February trial dates.

At the hearing it became apparent that one of the defendants, Kieu Le, was not even a party to the credit agreement upon which the complaint is based. This fact is evident from the exhibits which the plaintiff has attached to its own complaint. Quite obviously there can be no substantial justification for bringing this complaint against someone not a party to the very contract upon which the complaint is based.

The plaintiff's only responses to the motion so far as it concerns the remaining defendant, who is a party to the contract, are its unverified statements that a balance was owed on its credit card; that the defendants had other credit cards with balances owed; that the defendants' monthly income is approximately the same as their expenses; and that, consequently, in plaintiff's opinion, the defendants did not have the ability to pay the credit card charges. There is nothing else in plaintiff's papers which could be considered

evidence of fraud, false pretenses or false representation on the part of the defendants, nor is there anything to indicate that the plaintiff relied on any representation made by the defendants.[2] These are the fundamental, statutory elements which must be proven by any plaintiff seeking an exception to a discharge under section 523(a)(2)(A). *See Fowler Brothers v. Young (In re Young )*, 91 F.3d 1367 (10th Cir.1996). Furthermore, plaintiff's failure to offer any proof of discovery and its failure to comply with the local rules and the scheduling order prior to both the December and February trial dates is not the conduct of one who believes its position is substantially justified.

A review of the practices of plaintiff's attorneys, Tips & Gibson, in similar adversary proceedings, is relevant to the issues under consideration. The records of the clerk for this district indicate that in 1996 the firm filed 45 complaints seeking exceptions to discharges on behalf of creditors having debts arising from credit card agreements; that 100 such complaints were filed in 1997; and that through April, 1998, 18 complaints have been filed. All the complaints are virtually the same form, with the numbers being the most significant variance from one to another. Of all these adversary proceedings the firm apparently has taken only one to trial and in that instance did not prevail.[3]

The strategy and pattern of the firm is similar in virtually all the cases—if the defendant does not capitulate by agreeing to reaffirm the debt, or some part of it, the complaint is then dismissed on the eve of the trial. In several other analogous cases where the court has heard the firm's motions for entry of stipulated judgments the defendant-debtors have stated that the compelling reason for reaffirmation of their credit card

---

1. Local Bankruptcy Rule 20(d), as then in effect, provided that "[u]nless otherwise ordered, counsel for the plaintiff or movant is responsible for initially preparing, circulating and submitting to the Court the final pretrial order in adversary proceedings." The plaintiff in this proceeding failed to fulfill these requirements.

2. Even if the plaintiff did rely on some representation made by the defendants, which has not been alleged, that reliance must be justifiable. *See Field v. Mans*, 516 U.S. 59, 116 S.Ct. 437,

133 L.Ed.2d 351 (1995). At the hearing, plaintiff offered no evidence which would to even indicate any justifiable reliance on any statement made by the defendants.

3. Apparently, in another adversary proceeding, decided by a different judge, *subsequent* to the trial date of this matter, the plaintiff's attorneys took the matter to trial and were awarded a portion of the requested relief.

debt was because they simply could not afford to pay their attorneys' fees in connection with defending the complaints. The firm's pattern of conduct appears as little more than the use of this court and the Bankruptcy Code to coerce from these debtors reaffirmation of their unsecured credit card debt or some portion of it. This is accomplished under the guise of an agreed judgment of nondischargeability.

Misconduct of this nature in the context of section 523(d) is discussed in the standard bankruptcy law treatise. *Collier on Bankruptcy,* ¶ 523.08[8], (15th ed. Rev.1997) states:

> Section 523(d) provides for attorney's fee shifting in favor of the debtor in certain circumstances in dischargeability litigation under section 523(a)(2). In the absence of section 523(d), the threat of litigation over the discharge exceptions of section 523(a)(2) and the attendant costs of litigation could induce debtors to settle for a reduced sum. Thus, creditors with marginal cases could compel at least part of their claims to be excepted from discharge or reaffirmed, despite the weakness of their cases. To balance the scales, Congress enacted section 523(d). The purpose is to discourage creditors from bringing objectively weak false financial statement litigation in the hopes of extracting a settlement from a debtor anxious to avoid paying attorney's fees to defend the action.

This portion of the text describes precisely plaintiff's conduct in this proceeding which is in line with the pattern established by Tips & Gibson in the other proceedings brought by it in cases representing credit card issuers. As a result of this practice the defendant-debtors are left with no other reasonable alternative but to allow the debt to be excepted from their discharge for the sole reason that they are bankrupt and unable to pay the costs and fees of defending the complaint. If they don't succumb, the complaint is dismissed just before the trial and the debtors are still obligated for a considerable portion

of the expense of their defense. This is exactly the coercive conduct that section 523(d) is intended to circumscribe.

The Bankruptcy Appellate Panel for the Ninth Circuit considered section 523(d) in *American Savings Bank v. Harvey (In re Harvey )*, 172 B.R. 314 (9th Cir. BAP 1994). There the court concluded that imposition of fees and costs did not require any finding of bad faith or frivolity on part of the plaintiff-creditor. The decision does point out that the defendant-debtor must prove the three elements that (1) the creditor requested the determination of dischargeability of its debt, (2) the debt is a consumer debt, and (3) the debt was discharged. It then said that once the defendant establishes these elements the burden shifts to the creditor to show that its actions were substantially justified. The *Harvey* test has been followed by bankruptcy courts in at least two other circuits. *See Turning Stone Casino v. Vianese (In re Vianese )*, 195 B.R. 572 (Bankr.N.D.N.Y.1995); *Phillips v. Napier (In re Napier )*, 205 B.R. 900 (Bankr.N.D.Ill.1997).

■ There is no question in this proceeding but that the defendants have established the three essential elements and the plaintiff-creditor does not contend they did not. The plaintiff had ample opportunity at the hearing to attempt to show its actions were substantially justified and offered not even a scintilla of evidence which, in this court's analysis as the fact finder, supported its position. It merely argued that, based on the bare allegations of its complaint and the unverified statements in its motion papers, it had demonstrated the requisite justification. Such is not the case. The determination of substantial justification is largely one of fact which requires proof of elements such as what the party did prior to making the complaint to investigate and substantiate the allegations, and what proof it has to establish the elements essential for it to prevail, which are fraud, false pretenses or false representation.[4] The plaintiff's argument that the

---

4. Under the case of *Citibank South Dakota v. Dougherty (In re Dougherty)*, 84 B.R. 653 (9th Cir. BAP 1988), several factors are listed to be examined to determine the existence of fraud. However, the plaintiff did not choose to argue the *Dougherty* test but, rather, relied upon the implied representation test for showing fraud. *See* Memoranda of Authorities filed by plaintiff on April 13, 1998. Even granting the plaintiff the benefit of the doubt in that it argued an

defendant made an implied representation of a present ability to pay while the bankruptcy schedules show he may not have had the ability to pay the charges proves nothing, for the burden is to prove the statutory elements, not merely to prove an apparent inability to pay. Fundamentally all the plaintiff has shown is that defendant, Thien Le, may have breached his contract because he was unable to pay the sums due, and nothing more.[5]

■ Merely proving an implied representation of an ability to pay on behalf of the defendant-debtor is insufficient for the very terms of section 523(a)(2)(A) specifically restrict courts from finding fraud, false pretenses or a false representation on the basis of unwritten statements of a debtor's financial condition. If the complaint is that the debtors impliedly misrepresented their financial condition then it must be based on section 523(a)(2)(B) which requires that the statement be in writing. Since this requirement applies in cases of express unwritten statements by debtors it certainly would apply equally in the case of a mere *implied* unwritten statement. *See, e.g., AT & T Universal Card Services Corporation v. Feld (In re Feld )*, 203 B.R. 360 (Bankr.E.D.Pa.1996); *Montgomery Ward & Co. v. Blackburn (In re Blackburn )*, 68 B.R. 870 (Bankr.N.D.Ind. 1987); *Norwest Bank of Iowa v. Orndorff (In re Orndorff )*, 162 B.R. 886 (Bankr.N.D.Okla. 1994);[6] *AT & T Universal Card Services Corporation v. Chinchilla, (In re Chinchilla )*, 202 B.R. 1010 (Bankr.S.D.Fla.1996). If every person using a credit card had the ability to pay the charges when they were

incurred it is unlikely there would be such a proliferation of credit card debt, for the obvious purpose of the cards is to extend credit until the time the debtor has the ability to pay. *See Chevy Chase Bank, FSB v. Briese (In re Briese )*, 196 B.R. 440, 448 (Bankr.W.D.Wis.1996)("people use credit cards *precisely because they do not have a present ability to pay.*") (Emphasis in the original.)

■ It is settled law in this circuit, as well as in most others, that "[e]xceptions to discharge are construed narrowly, and the burden of proving that a debt falls within a statutory exception is on the party opposing discharge" and "[t]his section [523(a)(2)(A) ] includes only those frauds involving moral turpitude or intentional wrong, and does not extend to fraud implied in law which may arise in the absence of bad faith or immorality." *Driggs v. Black (In re Black )*, 787 F.2d 503, 505 (10th Cir.1986). Granting the plaintiff-creditor some latitude—even if there might be some doubt as to whether or not it has sustained its burden of proof, "because of the fresh start objectives of bankruptcy, doubt is to be resolved in the debtor's favor." *Bellco First Federal Credit Union v. Kaspar (In re Kaspar )*, 125 F.3d 1358, 1361 (10th Cir.1997).

The defendant's breach of contract due to his inability to pay falls far short of any proof of moral turpitude, intentional wrong, bad faith or immorality. The very most that can be said for plaintiff's case is that it *might* be able to show some element of implied fraud, which is clearly insufficient.[7] It also is sig-

incorrect theory of law, it still did not meet its burden, pursuant to *Harvey,* of proving the alleged fraud under these factors.

**5.** It is interesting to note that the plaintiff's attorneys, Tips & Gibson, very recently represented a different bank in the Bankruptcy Court for the Northern District of Oklahoma. In that adversary proceeding, like this one, the plaintiff failed to meet its burden of proof concerning an allegation of fraud in the use of credit cards. *Bank One Columbus v. Schad (In re Kountry Korner Store)*, 221 B.R. 265 (Bankr.N.D.Okla.1998).

**6.** In *Orndorff* the plaintiff made the same implied representation argument. The bankruptcy court discusses the various theories applied in such

cases and pointedly states that "[r]egardless of which approach is applied in this case, the Court finds that there is a fatal flaw in Norwest's position which defeats its claim of nondischargeability. The defect arises from the fact that Norwest bases its claim on the existence of an implied representation as to Debtor's ability to pay. This is a representation as to Debtor's financial condition which cannot be used to except a debt from discharge under § 523(a)(2)(A)." *Orndorff,* at 889. Interestingly, in *Orndorff* the plaintiff was represented by the same attorneys, Tips & Gibson, who now represent this plaintiff.

**7.** Not only is the evidence offered by the plaintiff insufficient under the implied representation test, but it is also insufficient under the *Dougherty* test.

nificant that *Black* has been the established rule in this circuit for over 12 years. *See also Anastas v. American Savings Bank* (*In re Anastas*), 94 F.3d 1280, 1285 (9th Cir. 1996), which says "[w]e emphasize that the representation made by the card holder in a credit card transaction is not that he has an *ability* to repay the debt; it is that he has an *intention* to repay."

 As pointed out by *Harvey*, and the other cited cases, once the debtors establish their *prima facie* case, the unsuccessful creditor then bears the burden of proving that its position was substantially justified. "The 'substantially justified' standard is derived from the Equal Access to Justice Act [28 U.S.C. § 2412(d)], under which the losing party must make a strong showing of justification for its claims." *Collier on Bankruptcy*, ¶ 523.08[8] (15th ed. Rev.1997). This is a mixed question of fact and law that must be proven as any other statutory component. When the creditor fails to establish the necessary elements the bankruptcy court is under an affirmative duty to allow the debtors' costs and fees for section 523(d) then provides that the court "*shall* grant judgment in favor of the debtor." (Emphasis supplied.) There is *no room for discretion* unless the court finds there are "special circumstances" that would make the award unjust. Here the plaintiff does not argue this element of the statute and there are no special circumstances evident in the record.

Accordingly, the court concludes there was no substantial justification for the plaintiff's conduct and must enter judgment for the defendants, allowing them to recover their reasonable fees and costs from the plaintiff. The clerk will notice a hearing to determine the amount of the award.

The defendants moved for sanctions under Fed. R. Bankr.P. 9011. However, the defendants have withdrawn that motion.[8]

Because the plaintiff voluntarily corrected the violation in question by dismissing the proceeding against the defendants, and because no order to show cause was issued before the dismissal, pursuant to Fed. R. Bankr.P. 9011(c)(2)(B), this court cannot impose monetary sanctions.[9]

The plaintiff and its attorneys are put on notice, however, that continuation of the conduct described in this order in other proceedings may compel the court to inquire whether or not it is done for an improper purpose such as to harass or cause needless increase in the cost of litigation. If it is so determined, the court then may impose penalties sufficient to deter repetition of their conduct or comparable conduct by others similarly situated.

---

8. The plaintiff has requested its own attorneys' fees and costs with regard to the defendants' motion for sanctions as they filed their motion in violation of the safe harbor provision of Fed. R. Bankr.P. 9011(c)(1)(A). However, also pursuant to Fed. R. Bankr.P. 9011(c)(1)(A), this court finds that attorneys' fees and costs are not warranted as any harm was de minimis. Indeed, this conclusion is supported by the fact that the plaintiff, for some unknown reason, rather vigorously *opposed* the defendants' attempts to withdraw their request for sanctions. Thus, at least some of the time spent by the plaintiff in responding to the defendant's request was without substantial justification.

9. This court notes that another bankruptcy court in the Tenth Circuit has recently awarded sanctions against a credit card issuer's attorney when an adversary proceeding was improperly initiated against the wife of a debtor, without any investigation. *See Household Credit Services v. Melton* (*In re Melton*), 217 B.R. 869 (Bankr. D.Colo.1998). The *Melton* case has numerous similarities to this case.